525 So.2d 764 (1987)
Crawford BULLOCK, Jr.
v.
STATE of Mississippi.
No. DP-14.
Supreme Court of Mississippi.
September 2, 1987.
Rehearing Denied June 3, 1988.
*765 Joseph T. McLaughlin, Henry Weisburg, Elsie A. Crum, Daniel Levin, Sherman & Sterling, New York City, Percy Stanfield, Jr., Stanfield, Carmody & Coxwell, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., Jackson, for appellee.
Before EN BANC.

ON MOTION TO REINSTATE DEATH SENTENCE AND MOTION TO SET A NEW EXECUTION DATE
PART I: ROY NOBLE LEE, Presiding Justice, for the Court, Holding (1) That This Court May Proceed to Make a Determination of Whether or Not the Record in This Case, as Made, Contains at Least One of the Enmund Requisites and (2) That at Least One of the Enmund Requisites is Reflected by the Record.
PART II: ANDERSON, J., for the Court, Determining That Bullock be Sentenced to Imprisonment for Life.

PART I.
Crawford Bullock, Jr. is now before this Court on a motion of the State of Mississippi to reinstate the death sentence and to set a new execution date, and upon Bullock's cross-motion to remand this cause to the lower court for a resentencing hearing before a jury, or, in the alternative, to order the imposition of a sentence of life imprisonment here. (Appellant's Brief  pp. 12-31).
Crawford Bullock, Jr. was indicted at the November 1978 Term of the Circuit Court, First Judicial District, Hinds County, Mississippi, for the capital murder of Mark Dickson, while committing the crime of robbery against Dickson. An accomplice in the crime was Rickey Tucker, who actually administered massive blows to the victim's head, which resulted in his death. A bifurcated trial was held during the May 1979 Term of said court, and the jury returned a guilty verdict of capital murder at the conclusion of the first phase of the trial. A separate sentencing phase was held following the guilty verdict, and, after deliberation, the jury returned a verdict imposing the death sentence as punishment for the crime. Reviews of his conviction and sentence by this Court and the Federal courts are enumerated in the following sequence:
(1) The Mississippi Supreme Court affirmed the conviction and sentence August 6, 1980. Petition for rehearing was denied January 14, 1981. Bullock v. State, 391 So.2d 601 (Miss. 1980).
(2) Petition for writ of certiorari to the Supreme Court of Mississippi was filed in the United States Supreme Court seeking review of the decision of the state court and was denied by the United States Supreme Court. Bullock v. Mississippi, 452 U.S. 931, 101 S.Ct. 3068, 69 L.Ed.2d 432 (1981).
*766 (3) Bullock filed an Application for Leave to File a Petition for Writ of Error Coram Nobis with the Mississippi Supreme Court, which application was denied without opinion on October 7, 1981.
(4) Bullock then sought relief by Petition for Writ of Habeas Corpus in the United States District Court for the Southern District of Mississippi. Magistrate John Countiss, sitting as a district judge, held an evidentiary hearing on the issue of ineffective assistance of counsel and, after consideration of the issues raised by Bullock, relief was denied on the petition June 30, 1983. Bullock v. Lucas, Civil Action No. J81-0357(N).
(5) The denial of habeas relief was appealed by Bullock to the United States Court of Appeals for the Fifth Circuit and, on September 21, 1984, that court affirmed the guilt phase of appellant's trial and reversed the sentence phase. The reversal was based on the Fifth Circuit's interpretation of the holding in Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Bullock v. Lucas, 743 F.2d 244 (5th Cir.1984). The State of Mississippi filed petitions for panel rehearing and rehearing en banc, which were denied October 31, 1984, 747 F.2d 1465.
(6) The State of Mississippi petitioned the United States Supreme Court to grant a petition for certiorari to the Fifth Circuit Court of Appeals, seeking reversal of the judgment of that court. The United States Supreme Court granted the State's petition for certiorari on April 22, 1985. Cabana v. Bullock, 471 U.S. 1052, 105 S.Ct. 2110, 85 L.Ed.2d 476 (1985). Arguments were heard on November 5, 1985, and, on January 22, 1986, the United States Supreme Court reversed the judgment of the Fifth Circuit Court of Appeals, but vacated the death sentence and remanded for a determination by the Mississippi Supreme Court, through state procedures, whether the Enmund requirements were met. Cabana v. Bullock, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986).
(7) On April 21, 1986, the United States District Court for the Southern District of Mississippi remanded the case to this Court for further proceedings consistent with the holding of the United States Supreme Court in Cabana v. Bullock, supra.

A.

MAY THE MISSISSIPPI SUPREME COURT DETERMINE FROM THE TRIAL RECORD AS MADE IN THIS CASE WHETHER OR NOT THE REQUISITES OF ENMUND v. FLORIDA, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), WERE MET, OR MUST THE CAUSE BE REMANDED TO THE LOWER COURT FOR A EVIDENTIARY HEARING BY THE TRIAL JUDGE OR JURY FOR SUCH DETERMINATION?
Enmund v. Florida, supra, was decided in 1982, approximately two (2) years after Bullock was tried and sentenced to suffer the death penalty. In Enmund, the United States Supreme Court ruled that the Eighth Amendment forbids the imposition of the death penalty on "one ... who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place, or that lethal force will be employed." 458 U.S. at 797, 102 S.Ct. at 3376, 73 L.Ed.2d at 1151. The question in this case before the U.S. Supreme Court, and for this Court on remand, is for a determination in whose hands the decision that a defendant possesses the requisite degree of culpability properly lies. If that decision properly lies within the function of this Court, on remand, then on the record before us, do we find from the record that the Enmund requisites were met, or that the cause must be remanded for an evidentiary hearing in the lower court?
We look for the answer to the first prong of the question to the decision of the United States Supreme Court in Cabana v. Bullock, supra. There, the Court said:
But our ruling in Enmund does not concern the guilt or innocence of the defendant  it establishes no new elements of the crime of murder that must be found by the jury. Rather, as the Fifth Circuit itself recognized, Enmund "does not affect *767 the state's definition of any substantive offense, even a capital offense." Reddix v. Thigpen, 728 F2d [705], at 709 [5th Cir.1984]; see also Enmund, 458 US, at 810, n 19, 73 L Ed 2d 1140, 102 S Ct 3368 (O'Connor, J., dissenting). Enmund holds only that the principles of proportionality embodied in the Eighth Amendment bar imposition of the death penalty upon a class of persons who may nonetheless be guilty of the crime of capital murder as defined by state law: that is, the class of murderers who did not themselves kill, attempt to kill, or intend to kill.
The decision whether a particular punishment  even the death penalty  is appropriate in any given case is not one that we have ever required to be made by a jury. Indeed, in Spaziano v. Florida, 468 US 447, 82 L Ed 2d 340, 104 S Ct 3154 (1984), we specifically rejected the argument that the Sixth Amendment or any other constitutional provision provides a defendant with the right to have a jury consider the appropriateness of a capital sentence. Moreover, the decision whether a sentence is so disproportionate as to violate the Eighth Amendment. In any particular case, like other questions bearing on whether a criminal defendant's constitutional rights have been violated, has long been viewed as one that a trial judge or an appellate court is fully competent to make.
* * * * * *
Indeed, Enmund does not impose any particular form of procedure upon the States. The Eighth Amendment is satisfied so long as the death penalty is not imposed upon a person ineligible under Enmund for such punishment. If a person sentenced to death in fact killed, attempted to kill, or intended to kill, the Eighth Amendment itself is not violated by his or her execution regardless of who makes the determination of the requisite culpability; by the same token, if a person sentenced to death lacks the requisite culpability, the Eighth Amendment violation can be adequately remedied by any court that has the power to find the facts and vacate the sentence. At what precise point in its criminal process a State chooses to make the Enmund determination is of little concern from the standpoint of the Constitution. The State has considerable freedom to structure its capital sentencing system as it sees fit, for "[a]s the Court has several times made clear, we are unwilling to say that there is any one right way for a State to set up its capital sentencing scheme." Spaziano, supra, at 464, 82 L Ed 2d 340, 104 S Ct. 3154, at 3164; ... [Citations omitted].
... Rather, the court must examine the entire course of the state-court proceedings against the defendant in order to determine whether, at some point in the process, the requisite factual finding as to the defendant's culpability has been made....
* * * * * *
... [I]t is Mississippi, therefore, not the federal habeas corpus court, which should first provide Bullock with that which he has not yet had and to which he is constitutionally entitled  a reliable determination as to whether he is subject to the death penalty as one who has killed, attempted to kill, or intended that a killing take place or that lethal force be used.
VI
The proceeding that the state courts must provide Bullock need not take the form of a new sentencing hearing before a jury. As indicated above, the Eighth Amendment does not require that a jury make the findings required by Enmund. Moreover, the sentence currently in force may stand provided only that the requisite findings are made in an adequate proceeding before some appropriate tribunal  be it an appellate court, a trial judge, or a jury. A new hearing devoted to the identification and weighing of aggravating and mitigating factors is thus, as far as we are concerned, unnecessary.
Accordingly, the District Court should be directed to issue the writ of habeas corpus vacating Bullock's death sentence *768 but leaving to the State of Mississippi the choice of either imposing a sentence of life imprisonment or, within a reasonable time, obtaining a determination from its own courts of the factual question whether Bullock killed, attempted to kill, intended to kill, or intended that lethal force would be used. If it is determined that Bullock possessed the requisite culpability, the death sentence may be reimposed. The judgment of the Court of Appeals is modified to this extent, and the case is remanded to that court for further proceedings consistent with this opinion. (Original emphasis)
474 U.S. at 384-387, 106 S.Ct. at 696-697, 700, 88 L.Ed.2d at 715-717, 719-720.
Therefore, after careful consideration of Cabana v. Bullock, supra, this Court is of the opinion, and holds, that it may properly examine and consider the record before us made in the original trial of this case, and make a determination whether or not that record supports the finding of at least one of the Enmund requisites. In the event we make the determination in the affirmative, then our procedure will be to reimpose the death penalty and set an execution date for Bullock. If we are unable to determine that at least one of the Enmund requisites is reflected by the record, then, we must remand the case to the lower court for an evidentiary hearing to make that determination.

B.

DOES THE RECORD REFLECTING THE EVIDENCE IN THIS CASE MEET THE ENMUND TEST FOR IMPOSING THE DEATH PENALTY?
Being fully apprised of, and mindful of the strictures contained in Enmund v. Florida, supra, and Cabana v. Bullock, supra, we examine Kirkpatrick v. Blackburn, 777 F.2d 272 (5th Cir.1985), where the Fifth Circuit said:
Neither Enmund nor our three decisions interpreting it make the use of the words "lethal force" talismanic. Enmund's teaching is that a person may not be sentenced to death for the death-dealing act of another unless he shares culpability for the homicide. The words "lethal force" as employed in Enmund make it clear, however, that the defendant will not be absolved if he contemplates "that lethal force will be employed by others." While the death penalty may not "be imposed for vicarious felony murder ...," it may be imposed on one who knowingly participates in a course of action that contemplates the use of lethal force, even if one is not the triggerman. Imposition of the death penalty, Enmund instructs, depends "on the degree of [the defendant's] culpability  what [his] intentions, expectations, and actions were."
When the defendant himself acts with the intention of inflicting great bodily harm and either killed the victim or was a principal in his killing and was engaged in or was a principal in the commission of robbery, he has acted with personal culpability. Indeed lethal force might be employed without the intention of inflicting great bodily harm, for example, by the use of a firearm to shoot at the victim without intending to cause his death or serious injury. When a defendant personally intends to inflict great bodily harm and succeeds in producing death, his personal involvement and individual culpability is sufficiently established that the capital sentence is not cruel and unusual.
777 F.2d at 287-288.
We have again studied the original opinion setting forth the facts of the Mark Dickson homicide, and we have carefully re-examined the record. While Rickey Tucker administered the blows with a whiskey bottle and a piece of concrete block, which resulted in the death of Dickson, Bullock was present, aiding, assisting through the entire episode. When Dickson fled from the automobile, pursued by Rickey Tucker, who eventually caught up with him and tackled him to the ground, Bullock was chasing the two of them and was only outdistanced because of a cast on his ankle and leg. When he got to them, Tucker told Bullock to hold Dickson and Bullock caught Dickson by the hair and held him in a *769 position that Tucker could and did render blows upon Dickson's head with the whiskey bottle. It was only when the bottle hit Bullock's hand as it held the victim's hair and head, broke and cut Bullock's hand, that he released Dickson. The evidence makes it inescapable that Bullock contemplated lethal force would be, and was, employed in the beating of Mark Dickson, which probably would result in his death. It is inescapable that Bullock personally intended that great bodily harm be inflicted upon Mark Dickson and that such bodily harm succeeded in producing Dickson's death. We are of the opinion that his personal involvement and individual culpability sufficiently established at least one of the requisites of Enmund. (See Appendix I, concurring opinion of then Chief Justice Warren Burger).
Therefore, we are of the opinion that (1) this Court has properly proceeded to make a determination of whether or not the record in this case as made contains at least one of the Enmund requisites, and (2) this Court has now determined that at least one of the Enmund requisites is overwhelmingly reflected by the record.

PART II.
ANDERSON, Justice, for the Court:
This Court should fix Crawford Bullock's sentence upon his conviction of the crime of capital murder at life imprisonment and thus bring to an end this capital litigation before it extends into its second decade.
We do not think there is any question but that this Court has the authority in a case such as this to fix once and for all the convicted defendant's sentence at life imprisonment. To begin with, the Supreme Court of the United States has told us in Cabana v. Bullock, 478 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), that one of our options is "imposing a sentence of life imprisonment." 88 L.Ed.2d at 720. More generally, our statutory law provides several options including one which authorizes this Court to set the sentence aside and remand the case for modification of the sentence to life imprisonment. MCA § 99-19-105(5)(b) (Supp. 1986). We have employed that option on occasion, albeit sparingly. See Edwards v. State, 441 So.2d 84, 93-94 (Miss. 1983). All of these expressions are in reality nothing more than declarations of the power that is inherent in this Court in any event, the power to review and modify any sentence imposed in a criminal case, subject only to constitutional limitations and to statutory minimums and maximums. In view of the fact that life imprisonment is an authorized punishment for the crime of capital murder, we have the inherent authority to fix the punishment of one such as Crawford Bullock at life imprisonment, if we deem such necessary in the interest of justice.
Without question we have the authority to make the requisite findings of fact and reimpose a death sentence, at least insofar as federal constitutional parameters are concerned. This, we understand, is the thrust of the opinion of Presiding Justice Roy Noble Lee. The question is whether we should exercise that authority. It is our opinion that we should not, at least not as Justice Lee suggests.
On the other hand, we recognize the force of Justice Robertson's view that we have the authority to remand the case for a new sentencing hearing. However legally correct that view might be, there is a practical side to the question which we think is ignored. If we remanded to the Circuit Court, as suggested by Justice Robertson, we would in effect be telling the circuit court to hold a new trial where the sole inquiry would be into Crawford Bullock's state of mind on September 21, 1978  almost nine years ago. This is something which it is simply not feasible or practical for any jury to be asked to do. Furthermore, such a retrial before a jury would be necessarily awkward. Would the entire case have to be retried? Does not every feature of what Bullock did or thought on September 21, 1978, go to the question of whether he intended to kill or contemplated that lethal force would be used? It is difficult for us to envision a meaningful trial being held on the issues presented at this late date.
*770 There is a further consideration. A lot of water has gone under the bridge since this Court originally affirmed in Bullock v. State, 391 So.2d 601 (Miss. 1980). That decision was rendered almost seven years ago. It is true that on that occasion we held Bullock's death sentence not unconstitutionally disproportionate. Subsequent history, however has brought before this Court close to forty cases in which appeals were presented from death sentences. See, e.g., cases listed in Wiley v. State, 484 So.2d 339, 355-56 (Miss. 1986). What is important about our administration of the capital sentencing system since the original Bullock decision on August 6, 1980, is that we have not affirmed a single death penalty where the defendant's participation in the crime was as insubstantial as in Bullock's case. In the context of the questions remanded to us by the Supreme Court of the United States, it is crystal clear that Crawford Bullock did not kill Mark Dickson. Rickey Tucker did. Moreover, it is crystal clear that Crawford Bullock did not attempt to kill Mark Dickson. Justice Roy Noble Lee in his opinion today would have us find only that Bullock contemplated that lethal force would be used. Our point is this: when you review all of the other capital cases decided since Bullock, no capital defendant has had a death sentence affirmed in this state where the sole finding was that he contemplated lethal force. James Stringer, Sr.'s death sentence was affirmed because he ordered the killing of the victims. See Stringer v. State, 454 So.2d 468 (Miss. 1984). Michael Leatherwood's death sentence was affirmed because he held and incapacitated the victim and allowed Tokman to commit the murder. Leatherwood v. State, 435 So.2d 645 (Miss. 1983).
In short, if you line up all of the death sentences we have considered and affirmed since 1980 and rank them by reference to the defendant's culpability and participation in the homicide, from the most egregious to the least, the case of Crawford Bullock would rank at the bottom as the least egregious. When this is coupled with the fact that Ricky Tucker, the individual who did the actual killing, has received a sentence of life imprisonment, we are further reinforced in our view that the only just result at this late date is to fix Bullock's sentence at life imprisonment.
Accordingly, it is the judgment of the Court this day that this case be remanded to the Circuit Court of Hinds County, Mississippi, with instructions that Crawford Bullock be sentenced to imprisonment for life.
MOTION TO REINSTATE DEATH SENTENCE AND TO SET NEW EXECUTION DATE OVERRULED.
AS TO PART I (A) [Court May Make Determination of Enmund Requisites]: WALKER, C.J., HAWKINS, P.J., and SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
ROBERTSON, J., dissents by written opinion joined by DAN M. LEE and PRATHER, JJ.
AS TO PART I (B) [At Least One Enmund Requisite is Reflected by Record]: WALKER, C.J., HAWKINS, P.J., and ANDERSON and GRIFFIN, JJ., concur.
SULLIVAN, J., dissents.
ROBERTSON, J., dissents by written opinion joined by DAN M. LEE and PRATHER, JJ.
AS TO PART II [Vacating Death Penalty and Remanding Cause to Circuit Court of Hinds County for Imposition of Life Sentence]: DAN M. LEE and SULLIVAN, JJ. concur.
ROBERTSON, J., concurs in result and files separate written opinion joined by DAN M. LEE and PRATHER, JJ.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and GRIFFIN, J., dissent.
HAWKINS, P.J., files separate dissent joined by GRIFFIN, J., and joined in part by DAN M. LEE, J.

*771 APPENDIX I
BURGER, Chief Justice, concurring.
Although I see no need for remanding for further findings in the State's courts, I join the Court's opinion. It is true that the Mississippi Supreme Court did not have Enmund's findings explicitly in mind when it reviewed the sentence of death imposed on respondent Bullock, because the Mississippi courts had completed their review before Enmund was decided. Nevertheless, the Mississippi Supreme Court's opinion makes it clear that Enmund's concerns have been fully satisfied in this case.
In rejecting respondent's claim that there was insufficient evidence to support his capital murder conviction because he "was an unwilling participant in the robbery  homicide," that court explicitly found "[t]he evidence is overwhelming that appellant was present, aiding and assisting in the assault upon, and slaying of, Dickson." Bullock v. State, 391 So 2d 601, 606 (1980) (emphasis added), cert. denied, 452 U.S. 931, 69 L.Ed.2d 432, 101 S.Ct. 3068 (1981). That court further rejected a claim that the death penalty was disproportionate to sentences imposed in similar cases, after again finding that "[t]he evidence is overwhelming that appellant was an active participant in the assault and homicide committed upon Mark Dickson." Id., at 614.
Surely these statements reflect a conclusion of the State court that respondent actively participated in the actual killing, which is far more than Enmund requires. In these circumstances, I see no need to expend finite judicial resources by remanding and calling for the Mississippi Supreme Court to tell us what it has already made clear, i.e., that respondent's culpability more than satisfies any proportionality concerns dictated by Enmund.
474 U.S. at 392-93, 106 S.Ct. at 700-01, 88 L.Ed.2d at 720-721.
ROY NOBLE LEE, Presiding Justice, dissenting as to Part II:
In Part I, a majority of the Court, following the dictates of Cabana v. Bullock, 474 U.S. at 384-387, 392, 106 S.Ct. at 696-697, 700, 88 L.Ed.2d at 715-717, 719-720, i.e., "[T]he Eighth Amendment does not require that a jury make the findings required by Enmund... . only that the requisite findings are made in an adequate proceeding before some appropriate tribunal, ... be it an appellate court, a trial judge, or a jury... .", held that this Court may properly examine and consider the record before us made in the original trial of this case, and now make a determination whether or not that record supports the finding of at least one of the Enmund requisites.
Further following Kirkpatrick v. Blackburn, 777 F.2d 272 (5th Cir.1985), which clearly stated
Enmund's teaching is that a person may not be sentenced to death for the death-dealing act of another unless he shares culpability for the homicide. The words "lethal force" as employed in Enmund make it clear, however, that the defendant will not be absolved if he contemplates "that lethal force will be employed by others." While the death penalty may not "be imposed for vicarious felony murder ...," it may be imposed on one who knowingly participates in a course of action that contemplates the use of lethal force even if one is not the triggerman. Imposition of the death penalty, Enmund instructs, depends "on the degree of [the defendant's] culpability  what [his] intentions, expectations, and actions were." ... the majority made a determination that at least one of the Enmund requisites is overwhelmingly reflected by the record.
After deciding (1) that this Court can determine from the record if the Enmund factors are satisfied from the record, and (2) that the Enmund test was met on the Bullock record, two of the majority in Part I joined the minority in the application of a proportionate review and the majority in Part II has commuted the death penalty for Bullock, affirmed by this Court August 6, 1980, rehearing denied, January 14, 1981, to life imprisonment.
*772 The 1980 Bullock Court thoroughly considered whether the sentence of death imposed upon Bullock is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant, and the unanimous Court held that the evidence is overwhelming that Bullock was an active participant in the assault and homicide committed upon Mark Dickson, and, in the Court's opinion, is not so disproportionate, wanton or freakish, when compared to those crimes, as to require the Court to reduce the sentence to life imprisonment. Only two members of the 1980 Bullock Court remain on the 1987 Court. In my opinion, no case could ever be finalized, if the Court takes the position to base decisions upon after-developed facts and records.
Following the mandate from the U.S. Supreme Court in Cabana v. Bullock, we have looked at the original record made in Bullock seven years ago to determine whether or not one of the four requisites stated in Cabana has been met, ... that is all that is required. No such requirement was a part of criminal jurisprudence in the United States at the time Bullock was decided.
Part II of the opinion states that, in the capital cases decided since Bullock, no capital defendant has had a death sentence affirmed in this state where the sole finding was that he contemplated lethal force; that James Stringer, Sr.'s death sentence was affirmed because he ordered the killing of the victims, Stringer v. State, 454 So.2d 468 (Miss. 1984); that Michael Leatherwood's death sentence was affirmed because he held and incapacitated the victim and allowed Tokman to commit the murder, Leatherwood v. State, 435 So.2d 645 (Miss. 1983).
The first such question arising in this state is the present Bullock case. The principal actor in Cabana is Bullock. We are reviewing Bullock pursuant to Cabana. The Stringer, supra, record does not indicate that Stringer ordered the slaying of Ray McWilliams, but that Stringer and three other persons entered into a conspiracy to rob McWilliams and his wife. They went to the McWilliams home, gained entrance, Stringer had a.357 Magnum, a tussle ensued over the weapon, and accomplice John Mack Parker put his pistol to McWilliams' head and killed him.
Michael Dale Leatherwood, supra, George Tokman and Jerry Fuson planned to rob a taxi driver, whom they called as fares. Leatherwood, who was on the backseat of the taxicab, looped a rope over the cab driver's neck and pulled him against and upon back of the front seat and held him in that position. Tokman stabbed the victim three times in the head, resulting in his death. Crawford Bullock helped run down Mark Dickson and held him by the hair of his head in a position where Rickey Tucker could, and did, inflict blows upon his head. Blows administered by Tucker resulted in Mark Dickson's death. Leatherwood entered a plea of guilty to capital murder and was given the death penalty during the sentencing phase. Bullock entered a plea of guilty to capital murder and was given the death penalty during the sentencing phase.
In my view, the facts and law as established by the United States Supreme Court, justify and support the death penalty in the present case, and I would reset an execution date for Bullock. Therefore, I dissent from Part II of the majority opinion commuting the death penalty to a life sentence.
The Justice Robertson dissent urges that we remand this question to the lower court for a jury determination as to whether one of the stated requisites exists, e.g., Bullock attempted to kill, or intended that a killing take place, or that lethal force would be employed, this, in spite of the U.S. Supreme Court's explicit instructions to the contrary. The dissent's author says that all Part I offers is an extended quotation from Cabana v. Bullock, which says nothing more than that, as a matter of federal constitutional jurisprudence, it is permissible for this Court to make the necessary fact finding; that the outcome determinative question is whether this Court, as a matter of state law, could or should get into the fact-finding business, and that the point is never mentioned by the other opinions, *773 nor is it controlled by Cabana v. Bullock.
The only reason we are crossing this bridge today is Cabana v. Bullock. The dissent would have us hold that Mississippi law has to go further than federal law in deciding Mississippi cases. Cabana v. Bullock offers the vehicle to ride in any direction this Court desires on the Enmund question, so long as it is determined. Part II of the majority has done that, in my opinion, by a concise, direct approach.
WALKER, C.J., HAWKINS, P.J., and GRIFFIN, J., join this dissent.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent from the majority's reduction of Bullock's sentence to life imprisonment.
Since the majority has made this disposition of the case, however, I do not think we need address the Enmund v. Florida issue in this case. Cabanna v. Bullock, 474 U.S. at 384-387, 392, 106 S.Ct. at 696-697, 700, 88 L.Ed.2d at 715-717, 719-720.
GRIFFIN, J., joins this opinion.
DAN M. LEE, J., joins this opinion only insofar as the necessity of meeting the Enmund issue.
ROBERTSON, Justice, concurring in part, dissenting in part:
On November 27, 1985, we said "there will be no shortcuts to the execution chamber while this Court sits." Pinkton v. State, 481 So.2d 306, 310 (Miss. 1985). Because the action several of my colleagues would have us take this day may only be described as a "shortcut," and because this question is likely to arise in several other cases likely to come before us in the near future, I will state my views separately.
Our marching orders today emanate from the Supreme Court of the United States. Those orders include resolution of a question of fact stated in Cabana v. Bullock, 474 U.S. 376, 392, 106 S.Ct. 689, 700, 88 L.Ed.2d 704, 720 (1986) as
whether Bullock killed, attempted to kill, intended to kill, or intended that lethal force would be used.[1]
But there is a prior question of procedure: who will decide the question of fact? Will it be decided by this Court from the record before us, by the Circuit Court sitting without a jury, or by a newly convened Circuit Court jury?
These questions presented, the significance of Cabana v. Bullock is spent. Not one word in that opinion of the Supreme Court of the United States released January 22, 1986, suggests even a whisper what the answer should be, for both questions  the question of fact and the prior procedural question  are become wholly questions of state law.
We should consider first the procedural question: what body within this state's judicial system should decide the fact question presented. Several of my colleagues would hold that this Court should become the factfinder, a novel role for us. It is my view that we should identify the procedural options available under state law (again, Cabana v. Bullock has nothing to say about this) and make our choice among those by reference to thoughts of which is/are institutionally and pragmatically most capable of minimizing the possibility of error. As will be explained presently, I consider the Circuit Court, sitting with or without a jury, equally competent to avoid error. Sound legal analysis of the point suggests that between these two options, trial by jury should be selected.
There are many possible beginning points. One obviously is that we have been instructed by legislative enactment that trial of the sentencing phase of a capital murder case shall be before a jury. Miss. Code Ann. § 99-19-101 (Supp. 1986). The fact question remanded to us is a sentencing phase question. That statute, as it *774 existed at the time of Bullock's trial, required that a jury weigh the aggravating and mitigating circumstances and thereafter provided as follows:
(3) For the jury to impose a sentence of death, it must unanimously find in writing the following:
(a) That sufficient factors exist as enumerated in subsection (7) of this section;
(b) That sufficient aggravating circumstances exist as enumerated in subsection (5) of this section; and
(c) That there are insufficient mitigating circumstances, as enumerated in subsection (6), to outweigh the aggravating circumstances.
In each case in which the jury imposes the death sentence, the determination of the jury shall be supported by specific written findings of fact based upon the circumstances in subsections (5) and (6) of this section and upon the records of the trial and the sentencing proceedings. If the jury does not make the findings requiring the death sentence, the court shall impose a sentence of life imprisonment.
Miss. Code Ann. § 99-19-101 (Supp. 1986).
This provision establishes an absolute primacy to the role of the jury in making the factual determinations requisite to imposition of the penalty of death. To be sure, our law at the time made no mention of the fact question before us today: whether Bullock killed, attempted to kill, intended to kill, or intended that lethal force would be used. It would seem on principle that, before we would treat this fact question according to a procedure different from that mandated by Section 99-19-101(3), something should be said identifying the characteristics of today's factfinding which called for the differing, shortcut treatment. No such differentiation has been made or even attempted.
The nature of the fact question with which we are concerned is important. While Cabana v. Bullock gives us four alternatives, it is apparent that two are less than viable. There is no evidence in the record before us that Bullock killed Mark Dickson, nor is there evidence that he attempted to kill Mark Dickson. We are reduced then to two fact questions regarding Bullock's state of mind: whether he intended to kill or intended that lethal force would be used. The opinion authored by Presiding Justice Roy Noble Lee confesses the point, albeit sub silentio, when it proceeds to find that Bullock "contemplated lethal force would be, and was, employed in the beating of Mark Dickson, which probably would result in his death."
At Bullock's trial in the Circuit Court, the jury was asked to consider whether it found the following aggravating circumstances as applicable to Bullock. It found:
1. The capital murder was committed while the defendant, either alone or with another, was engaged in the commission of robbery;
2. The capital murder was especially heinous, atrocious or cruel.
Why shouldn't the other findings necessary to (re)imposition of the penalty of death be made by a jury? At the very least it is incumbent upon those who would opt for a different procedure to explain why the required finding regarding Bullock's state of mind is so different from the others that the jury trial is rendered inappropriate. Again we are afforded no explanation why the finding on Bullock's state of mind at the time of the murder of Mark Dickson could be better made here than by a jury.
At the time of Bullock's trial, there was embedded in this state's law the longstanding tradition that all fact questions in criminal cases are decided before juries. Moreover, we had the specific statutory mandate that fact questions requisite to imposition of the penalty of death be resolved by jury. Since that time, the legislature has enacted what has become Miss. Code Ann. § 99-19-101(7) (Supp. 1986) which provides
(7) In order to return and impose a sentence of death the jury must make a written finding of one or more of the following:
(a) The defendant actually killed;
(b) The defendant attempted to kill;
(c) The defendant intended that a killing take place;

*775 (d) The defendant contemplated that lethal force would be employed.
This statute unequivocally requires that the specific findings which must be made in Bullock's case shall be made by a jury and must be made by the jury in writing. We made clear that this statute must be taken seriously in Pinkton. We there said
A separate, explicit and written jury finding [on the question of intent] is indispensable to the valid imposition of the death penalty.
Pinkton, 481 So.2d at 310. Because the jury in Pinkton made no such finding, we reversed a death sentence and remanded for a new trial and issued the proclamation regarding shortcuts with which I began this opinion.
Section 99-19-101(7) became effective in this state on March 29, 1983. See Miss. Laws, ch. 429, § 4 (1983). It was not on the books in 1979 at the time of Bullock's trial. While the statute expressly controlled Pinkton and required reversal, its force is not quite so great here.[2] Still, because it is the legislatively declared policy regarding the manner in which this state will determine that one should receive the penalty of death, it seems incumbent upon the Court to explain why this case is sufficiently different both from what is required in Section 99-19-101(7) and from Pinkton so that a different procedure for making the exact same fact determination should be employed. Again, no such offering appears.
There is a further consideration. We have said in more than a thousand cases that we lack the practical capacity to do a very good job of factfinding. In Gavin v. State, 473 So.2d 952 (Miss. 1985) we said
We sit as an appellate court and as such are ill-equipped to find facts... . Even if we wanted to be factfinders, our capacity for such is limited in that we have only a cold, printed record to review. The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to make findings of fact which will have the reliability that we need and desire.
Gavin, 473 So.2d at 955.
In the context of considering whether we would substitute our view for that of a jury on a question of fact, we have recognized repeatedly the truth that the chances of error in any findings we might make would be infinitely greater than is the case where those findings have been made by twelve citizens, peers of the defendant, who are on the trial scene and have smelled the smoke of the battle. See, e.g., Harveston v. State, 493 So.2d 365, 372 (Miss. 1986); Fisher v. State, 481 So.2d 203, 214 (Miss. 1985); Burge v. State, 472 So.2d 392, 396 (Miss. 1985); Cook v. State, 467 So.2d 203, 204 (Miss. 1985); City of Jackson v. Locklar, 431 So.2d 475, 479 (Miss. 1983).
If this be so regarding questions of fact generally, it is that much more so when the question of fact concerns a person's state of mind. There is no more subjective finding courts are called upon to make. It would seem on principle and on common sense that if there is any fact question that should always be submitted to a jury, it is the accused's state of mind. Conversely, there is no type of fact question we are less suited by capacity or resources to decide on appeal than one of an individual's state of mind.
In the context of my originally stated criteria for decision: which of the three constitutionally permissible fact finding options is least likely to produce error, fact finding by this Court ranks last. Indeed, moving the fact finding process here creates the anomolous possibility of a five to four vote. Juries, of course, must be unanimous. Miss. Code Ann. § 99-19-101(3) (Supp. 1986); see also Markham v. State, 209 Miss. 135, 137, 46 So.2d 88, 89 (1950). We exacerbate the dangers of error in our fact finding (in)capacity by the rule that we may proceed by simple majority.
In terms of error avoidance capacity, fact finding by jury or by trial judge without a *776 jury would seem tied for first. The electro-magnetic force of other law renders trial by jury the legally correct answer to today's question.
In the face of all of this, my colleagues' offering is meager: an extended, question begging quotation from Cabana v. Bullock which says nothing more than that, as a matter of federal constitutional jurisprudence, it is permissible for this Court to make the necessary factfinding. But the outcome determinative question is whether this Court, as a matter of state law, could or should get into the factfinding business. That point is never mentioned by the other opinions nor is it controlled by Cabana v. Bullock.
I am at a loss to know what else to say. My colleagues appear not to have given so much as a fleeting thought to a question absolutely prerequisite to a legal determination of whether Bullock should die: the question of who, as a matter of state law, should make the finding of fact on intent. Juxtaposed against this non-argument are (1) this state's century old legal practice of submitting all fact questions in criminal cases to juries, (2) the decade-old statutory mandate that all factual findings necessary to imposition of the penalty of death be made by a jury and returned as a part of a written verdict, (3) the 1983 legislative mandate that the precise findings at issue here be made solely by a jury and in writing, and (4) the fact that as a matter of institutional limitation we are ill-equipped to make fact findings generally, coupled with (5) the fact that if ever there were a type of finding of fact that should be made by one on the scene  judge or jury  observing the demeanor of the party involved, it is a finding of fact regarding an individual's state of mind.
By Part II of the opinion of the Court, Justice Anderson argues that we should impose upon Crawford Bullock and end this case once and for all. With respect, this too is a shortcut. I would remand for a new sentencing hearing on the questions put in Cabana v. Bullock, 474 U.S. at 392, 106 S.Ct. at 700, 88 L.Ed.2d at 720.
All of this leaves today's case in a novel though not unprecedented situation. There are less than five votes directing any particular disposition of the case. In this context, I recognize, as Justice Anderson explains, that Edwards v. State, 441 So.2d 84, 93-94 (Miss. 1983) requires imposition of a sentence of life imprisonment. The rule implicit in Edwards is that whenever, in hearing an appeal in a death penalty case, there are, with respect to review of the sentence, fewer than five Justices of this Court finally voting for any particular disposition on the issue of sentence, the defendant's sentence will be fixed at life imprisonment.
DAN M. LEE and PRATHER, JJ., join in this opinion.
PRATHER, J., also joins in result of Part II to remand to Circuit Court for imposition of life sentence.
NOTES
[1] The Attorney General has called to our attention the recent decision in Tison v. Arizona, 481 U.S. ___, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). That case has no impact upon the present proceedings for the Supreme Court has in no way altered the instructions given us in its January 22, 1986, decision in the case at bar.
[2] Cabana v. Bullock says the role of Section 99-19-101(7) is "a matter of state law that we do not attempt to resolve." 474 U.S. at 392 n. 7, 106 S.Ct. at 700 n. 7, 88 L.Ed.2d at 720 n. 7.