547 So.2d 792 (1989)
Willie N. REDDIX
v.
STATE of Mississippi.
No. DP-11.
Supreme Court of Mississippi.
July 19, 1989.
*793 Kenneth J. Rose, Jackson, Steven L. Winter, Coral Gables, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., Jackson, for appellee.
EN BANC.

ON PETITION FOR REHEARING
ANDERSON, Justice, for the Court:

I.
The original opinion in this case was handed down August 24, 1988, affirming the sentence of death imposed on Willie N. Reddix. Reddix filed a petition for rehearing arguing that his death sentence can not withstand either the Enmund requirements or proportionality review. We find the petition for rehearing well-taken and withdraw the original opinion.
In February 1975, Reddix was indicted by a Harrison County Grand Jury for the capital murder of Arthur Weinberger. He was tried on the indictment in 1975, convicted and sentenced to death. The conviction was reversed and a retrial ordered by this Court under Jackson v. State, 337 So.2d 1242 (Miss. 1976). Reddix v. State, 342 So.2d 1306 (Miss. 1977) (Reddix I). He was again convicted of capital murder and sentenced to death. An appeal was taken to this Court, and we affirmed. Reddix v. State, 381 So.2d 999 (Miss. 1980) (Reddix II).
Reddix filed a petition for writ of certiorari with the United States Supreme Court, which was denied November 10, 1980, Reddix v. Mississippi, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). He then filed an application for leave to file a petition for writ of error coram nobis with this Court which petition was denied without opinion on February 18, 1981.
After denial of state post-conviction relief, Reddix filed a petition for writ of habeas corpus with the United States District Court for the Northern District of Mississippi. That petition was transferred to the Southern District of Mississippi on motion of the court, and on November 10, 1982, that court entered findings of fact and conclusions of law granting the State's motion for summary judgment and dismissing Reddix' petition. On December 7, 1982, petitioner filed a motion for reconsideration and, on January 20, 1983, the district court entered an order vacating its prior opinion and order and granted the writ. Further, it ordered that Reddix be released from custody immediately. Reddix v. Thigpen, 554 F. Supp. 1212 (S.D.Miss. 1983).
The state appealed the order of the district court to the Fifth Circuit Court of Appeals, which affirmed the vacation of death sentence on the basis that Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), required a jury finding of intent to kill before a sentence of death could be carried out. The Fifth Circuit further reversed the lower court on the issue of releasing Reddix and remanded the case so all claims could be addressed. Reddix v. Thigpen, 728 F.2d 705 (5th Cir.1984). On petition for rehearing, the Fifth Circuit entered a second opinion holding that the evidence was sufficient to support a finding that Reddix had the personal intent to kill, but since the jury was not required to find this fact, the sentence should be vacated. Reddix v. Thigpen, 732 F.2d 494 (5th Cir.1984).
The State petitioned the United States Supreme Court for a writ of certiorari which petition was denied. Thigpen v. Reddix, 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984). On remand to the United States District Court for the Southern District of Mississippi, on December 23, 1985, that court denied Reddix' writ of habeas corpus but ordered a new sentencing hearing.
On February 4, 1986, the State filed a motion to reconsider under Rule 60(b), F.R.C.P., based on the decision of the United States Supreme Court in Cabana v. Bullock, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). The motion was denied.
*794 An appeal was taken to the Fifth Circuit and on November 19, 1986, that court affirmed the denial of the writ of habeas corpus in Reddix v. Thigpen, 805 F.2d 506 (5th Cir.1986). The earlier opinion of the Fifth Circuit was modified insofar as it required a new jury trial on the issue of the finding of intent to kill required by Enmund v. Florida, supra. The decision stated:
... since the Mississippi Courts did not find that Reddix had a personal intent to kill, Bullock actually commands exactly the relief that we awarded: allowing the state court to address the question in the first instance. Id. [106 S.Ct.] at 699. Our mention of a jury hearing on remand to the state courts should not be taken to require a jury determination of this issue, however. Id., at 700.
805 F.2d at 517. See, Cabana v. Bullock, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). This cause is currently before this Court on the state's motion to reinstate the death sentence and to set a new execution date for Reddix.

A.

IS THE SENTENCE OF DEATH DISPROPORTIONATE TO THE PENALTY IMPOSED IN SIMILAR CASES, CONSIDERING BOTH THE CRIME AND THE APPELLANT?
The United States Constitution and Section 99-19-105, Mississippi Code Annotated (Supp. 1988), require that we perform a proportionality review whenever the death penalty is imposed. We performed such a review and affirmed in Reddix II, 381 So.2d at 1011-13. However, the passage of time and subsequent developments convince us that the proportionality of Reddix' sentence must be reconsidered.
The crime underlying Reddix' conviction occurred approximately fourteen years ago, on December 2, 1974. At that time Reddix was eighteen years old, suffering some mental illness and mild retardation. Reddix' accomplice, Larry Jones, was also a borderline to mildly retarded man.
The facts of the crime come from Reddix' confession. He and Jones had a plan to rob Arthur Weinberger, a Biloxi clothing store owner. Reddix distracted Weinberger "to keep him from seeing Larry [Jones]". Nothing in the confession tells us what it was that Reddix was to keep Weinberger from seeing Jones do. Reddix watched during the three seconds it took for Jones to hit Weinberger "about three times" with a wrench. Reddix did nothing physically to assist Jones in this assault. Reddix later checked to see if Weinberger was dead and, finding him alive, placed Weinberger's coat under his head before leaving the store.
In Bullock v. State, 525 So.2d 764 (Miss. 1987), five members of this Court concurred in fixing the appellant's sentence at life imprisonment. Three justices did so on the basis that the appellant's death sentence was disproportionate to the penalty imposed in similar capital cases. Bullock, 525 So.2d at 769-770.
The facts upon which we relied in Bullock are virtually indistinguishable from the facts before us today, except that Reddix is, if anything, less culpable than was Bullock. Bullock actively assisted his accomplice by holding their victim down while the fatal blows were administered. Bullock, 525 So.2d at 768-69.
Our proportionality decision in Bullock, rested on the fact that, with only two exceptions, "no capital defendant has had a death sentence affirmed in this state where the sole finding was that he contemplated that lethal force would be used." Bullock, 525 So.2d at 770. We also noted that Bullock's accomplice, the actual killer, had received a life sentence, a point reinforcing our determination that justice required fixing Bullock's sentence at life imprisonment. Id. The same is true here. The United States District Court for the Southern District of Mississippi recently ordered that the State of Mississippi impose upon Larry Jones, the actual killer, a life sentence. Jones v. Smith, 685 F. Supp. 604, 607 (S.D. Miss. 1988). Therafter, the Harrison County Circuit Court sentenced Jones to life imprisonment.
*795 Accordingly, we hold that Reddix' death sentence is disproportionate to the penalty imposed in similar capital cases, considering both the crime and the appellant. It should be noted that at the time of our original proportionality review of this case, Enmund v. Florida, supra, had not yet been decided. Recognizing that whether or not Reddix' death sentence is proportional becomes irrelevant if Enmund requisites do not exist, we address the Enmund issue.

B.

DOES THE RECORD REFLECTING THE EVIDENCE IN THIS CASE MEET THE ENMUND TEST FOR IMPOSING THE DEATH SENTENCE?
In Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the United States Supreme Court held that the Eighth Amendment forbids the imposition of the death penalty on "one ... who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." Enmund, 458 U.S. at 797, 102 S.Ct. at 3376, 73 L.Ed.2d at 1151. In Bullock v. State, 525 So.2d 764 (Miss. 1987), we held that this Court has the authority to determine from the record whether or not the Enmund requisites have been proven beyond a reasonable doubt. Bullock, 525 So.2d at 768. We further held that where we are unable to determine that at least one of the Enmund requisite is reflected in the record, the case must be remanded to the trial court for an Enmund hearing. Bullock, 525 So.2d at 768.
Cabana v. Bullock, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), upon which we relied in Bullock, offered another alternative. The United States Supreme Court stated that rather than determining the existence of Enmund requisite facts, we may impose a life sentence. See, Bullock, 525 So.2d at 769. We choose, in this instance, to impose a sentence of life imprisonment on Willie N. Reddix.
The issue of Reddix' state-of-mind has become clouded by facts, not contained in the original record, with which we have been presented today. These facts come to us in the form of affidavits from the chief investigator of the crime and from Reddix' partner in crime. Their statements seriously call into doubt any factual evidence that Reddix intended to kill or contemplated that lethal force would be employed, which might have been gleaned from between the lines of his confession.[1] This situation would mandate a remand to the trial court for an evidentiary hearing on the issue of Reddix' intent to kill or knowledge that lethal force would be employed. Rather than so doing, at this late date, we recognize the Eighth Amendment prohibition against imposition of the death penalty on one who has not been found to have had any such intent or knowledge and fix Reddix' punishment at life imprisonment.
Accordingly, this case is remanded to the Circuit Court of Harrison County with instructions that Willie N. Reddix be sentenced to life imprisonment.
PETITION FOR REHEARING GRANTED; MOTION TO REINSTATE DEATH SENTENCE AND SET NEW EXECUTION DATE OVERRULED; REMANDED TO THE CIRCUIT COURT OF HARRISON COUNTY FOR RESENTENCING. ORIGINAL OPINION WITHDRAWN.
HAWKINS, P.J., concurs and files specially concurring statement.
DAN M. LEE, P.J., and PRATHER, J., concur as to life sentence.
ROY NOBLE LEE, C.J., and SULLIVAN, J., dissent.
ROBERTSON, PITTMAN and BLASS, JJ., not participating.
*796 HAWKINS, Presiding Justice, specially concurring:
Consistent with my dissent in Leatherwood v. State, 435 So.2d 645, 657 (Miss. 1983), I join in this opinion.
PRATHER, Justice, concurring:
I concur in the granting of the petition for rehearing, but for different reasons than those offered by the majority opinion.

I.
It is my position that the correct disposition of this case in its present posture would be to remand for a new sentencing hearing to permit a circuit court jury to make factfindings on the Enmund issue. Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). The questions is whether from the record this Court can, or ought, find one or more of the Enmund factors and reimpose the death sentence. Specifically, the issue is did Willie N. Reddix have the intent to kill or did he contemplate that lethal force would be employed in the robbery of Arthur Weinberger.[1] I am of the opinion that the record does not reflect such intent beyond a reasonable doubt.
Candor requires concession that Reddix' confession suggests his knowing participation in a plan to rob Weinberger and to disable him incident to that robbery. But this confession is all there is. We have before us not one word of testimony from either Reddix or Jones. I am of the opinion that on this record this Court may not say with confidence and beyond any reasonable doubt that Willie Reddix contemplated that lethal force would be used, much less that he intended to kill Arthur Weinberger. Because these Enmund findings have not heretofore been made by any Mississippi fact-finder, see Reddix v. Thigpen, 732 F.2d 494 (5th Cir.1984) and because life is in issue, common prudence suggests remand to the Circuit Court for a fact-finding hearing.
There is a problem more basic, one of institutional dimensions. In criminal cases fact finding is done by juries. Some preliminary questions of fact are decided by the trial judge. I know of no fact questions within this Court's domain. This simple premise was first analyzed in the dissent in Bullock v. State, 525 So.2d 764, 773-76 (Miss. 1987) and in a convincing way concluded that the law of this state does not authorize fact finding by this Court.
This Court faces today a like question: whether Willie N. Reddix had the personal intent to kill and contemplated that lethal force would be employed in the robbery of Arthur Weinberger. This, of course, is a question of fact, that is, a factual prerequisite to imposition of a sentence of death. In cases too numerous to cite we have stated the obvious: that intent is a question of fact peculiarly susceptible of resolution by a jury. See, e.g., Shive v. State, 507 So.2d 898, 900 (Miss. 1987); Billiot v. State, 454 So.2d 445, 463 (Miss. 1984); Taylor v. State, 452 So.2d 441, 450 (Miss. 1984); Williams v. State, 317 So.2d 425, 427 (Miss. 1975); Newell v. State, 308 So.2d 71, 73 (Miss. 1975).
As in Bullock, I submit that today's question of intent should be submitted to a jury for the reasons that: (1) this state's century old legal practice of submitting all fact questions in criminal cases to juries, (2) the decade-old statutory mandate [Miss. Code Ann. § 99-19-101 (Supp. 1986)] that all factual findings necessary to imposition of the penalty of death be made by a jury and returned as a part of a written verdict, (3) the 1983 legislative mandate [Miss. Code Ann. § 99-19-101(7) (Supp. 1986)] that the precise findings at issue here be made solely by a jury and in writing, and (4) the fact that as a matter of institutional limitation this Court is ill-equipped to make fact findings generally, coupled with (5) the practical reality that, if ever, there were a type of finding of fact that should be made by one on the scene  judge or jury  observing the demeanor of the party involved, it *797 is a finding of fact regarding an individual's state of mind.

II.
However, the unusual situation presents itself here where there is not a majority of the Court favoring the same disposition of this case. Where such is the vote of the Court, this Court's rule requires that the defendant be sentenced to life imprisonment. Bullock v. State, 525 So.2d 764, 770, 776 (Miss. 1987); Edwards v. State, 441 So.2d 84, 93-94 (Miss. 1983).
Accepting this rule and its application to this case, I vote to grant the petition for rehearing and direct the Circuit Court of Harrison County to impose a life imprisonment sentence on Willie N. Reddix.
DAN M. LEE, P.J., joins this opinion.
ROY NOBLE LEE, Chief Justice, dissenting:
On August 24, 1988, this Court sustained the Motion of the State of Mississippi to reinstate the death sentence affirmed by this Court February 13, 1980, in Reddix v. State, 381 So.2d 999 (Miss. 1980), and set the date of execution for Wednesday, September 21, 1988. The majority of the Court has now sustained the Petition for Rehearing and has ordered that the case be remanded to the lower court for the imposition of a life sentence upon Willie Reddix.
I think that the majority's analysis, which today leads to imposition of a life sentence for Reddix is misdirected and I dissent therefrom.
My views of the proper role of this Court in conducting an Enmund review are contained in the dissent to Bullock v. State, 525 So.2d 764, 771 (Miss. 1987) (Lee, P.J., dissenting). I was convinced then, and remain so convinced today, that this Court bears a duty in cases such as this to review the record to establish whether the constitutional dictates regarding individual intent have been met. With this premise, the majority agrees. (See majority opinion at p. 795). Application of this review, however, in my opinion, has led the majority to the erroneous conclusion that Willie Reddix, an admitted accomplice to the brutal bludgeoning death of an elderly man, does not possess the requisite intent under Enmund to support a sentence of death.
In Enmund v. Florida, the United States Supreme Court held that the Eighth Amendment forbids the imposition of the death penalty on "one ... who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." 458 U.S. at 797, 102 S.Ct. at 3376, 73 L.Ed.2d at 1151. Therefore, I look to the original record in Reddix v. State, 381 So.2d 999 (Miss. 1980), for the purpose of determining whether at least one of the Enmund requisites is present, e.g., that Reddix intended to kill or intended that a killing take place, or that lethal force would be employed. The evidence of what occurred before, at the time of, and after the slaying of Arthur Weinberger on December 2, 1974, is contained in the confession executed by Reddix. That confession follows:
I, Willie Reddix, was at my home on the 2nd of December, 1974, and Larry Jones was at my home. Larry is also known as Catfish. J.D. Reddix was not there at this time. He did not know anything about the plan that Larry and I had in mind. When J.D. came home, we asked him to give us a ride uptown. He took us uptown and parked in the lot behind the place that used to be Bradley's Cleaners. Larry Jones and I got out of the car, but my brother, J.D. Reddix, did not get out of the car. This was about 10:45 a.m. Larry and I walked uptown for about five or ten minutes. Then I, Willie Reddix, went into Art's Levi Store, and I began to question the man about a coat. He showed me a couple of coats, and he had his back turned to the door. About this time, Larry Jones, came in the store. I kept talking to the man to keep him from seeing Larry. For about the next three seconds, Larry hit the man about three times with a Stilson wrench. Then I ran to the door to keep a watchout. I had no *798 idea that the man was dead. Larry drug the man into the office. We gathered all the goodies. Larry took shirts and pants and hats and put them in a footlocker. I was at the door watching all the time. Larry said, "I can't get the cash register open." So I opened it for him. At this time I went in the office to see was Mr. Art dead, but he was still breathing, so I put his coat under his head, and then we left the scene. Larry carried the footlocker out of the store. Larry went to the left, on Croesus Street, and I went east on Howard Avenue. I was carrying a black jacket in my hand which I had took from the store. We met back at the car. J.D. was still in the car. Larry put the footlocker in the backseat of the car and he sat in the back seat. I got in the front seat. I gave the jacket to J.D. and told him, "Here is a jacket." J.D. did not ask us where we had been or where we got the things from. The only thing he said was "What you all got?" and I told him to just drive. We went home and parked the car in front of my house, and Larry took the footlocker into my house. When I opened the cash register, we both took the money out. I got about fifty dollars, and I got one silver dollar. After we got home, we laid low for the rest of the day. All J.D. got was the coat I gave him. We did not tell him what we had done. The gun was not used in the holdup that Larry had, just the Stilson wrench.
381 So.2d at 1002-1003.
The confession was corroborated by witnesses who testified that Reddix and Larry Jones got out of the automobile and walked toward Weinberger's store; that they returned twenty-five to thirty minutes later, one approaching from one way, carrying a footlocker and wearing ragged top combat boots; that the other one had a leather jacket coat on his shoulder when he returned; that the bearer of the footlocker put it in the car; and that the two of them got in the car, and drove away. The home of Reddix's mother, where he resided, was searched pursuant to a search warrant and officers found a locked footlocker with merchandise contained therein, all from the Weinberger store, and a pair of combat boots with ragged or fringed tops on them. Bloodstains were found on one of the boots.
Weinberger was slain by three blows to the head with a Stilson wrench. Reddix "kept talking to the man [Weinberger] to keep him from seeing Larry." After Jones had bludgeoned Weinberger, Reddix ran to the door and maintained a watch. We interpret the last sentence of the Reddix confession to mean that Jones had a gun on his person, but used the Stilson wrench instead of the gun to slay Weinberger. Use of the wrench prevented attraction from the explosion of a gun.
In Reddix v. Thigpen, 732 F.2d 494 (5th Cir.1984), the Fifth Circuit stated "that the evidence in this case is sufficient to support a jury conclusion that Reddix had a personal intent to kill."
The death penalty may be imposed upon one who knowingly participates in a course of action which contemplates the use of lethal force, even if that person is not the triggerman. Also, lethal force may be employed, meeting the Enmund requirement, without the intention of causing death or serious injury. Kirkpatrick v. Blackburn, 777 F.2d 272, 287-88 (5th Cir.1985). See also Ross v. Kemp, 756 F.2d 1483, 1489 (11th Cir.1985).
Therefore, I am of the opinion that the record reflects beyond reasonable doubt (1) Reddix had the personal intent to kill, and (2) contemplated lethal force would be, and was, employed in the robbery and slaying of Arthur Weinberger, and that the test announced in Enmund v. Florida has been met and passed.
I see nothing in the papers presented on Reddix' behalf on petition for rehearing which excuses a clear impression that Reddix assisted in a very real manner in the killing of Arthur Weinberger. He diverted Weinberger's attention so that his partner, Larry Jones, could brutally beat the old man into submission, and ultimately, to death. He "ran to the door to keep a watchout." Thereafter, he opened the cash register and later split the robbery proceeds *799 with Jones. In sum, Reddix is light years apart from the minimal culpability which led the United States Supreme Court to invalidate the death sentence of Earl Enmund. Enmund v. Florida, supra.
As I noted in the Bullock dissent, a death sentence should be upheld by this Court on Enmund grounds where the record supports at least one of the Enmund requisites. It is obvious that this case passes the threshold.
Even more troubling than the majority's wholesale abandonment of the proper Enmund analysis is the astounding conclusion that Reddix' sentence should be subjected to a last-minute proportionality analysis. On a finding that "the passage of time and subsequent developments" somehow change an earlier reality, the majority today discards the res judicata effect of our findings made in 1980.
Though not required by either the state or federal constitution, see e.g., Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), we are required by statute to determine on direct appeal "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Miss. Code Ann. § 99-19-105(3)(b) (Supp. 1986). This analysis is performed on every capital case in which a sentence of death is returned and was done on Reddix' sentence in 1980. At that time, we concluded (by unanimous vote) that Reddix' death sentence was not "disproportionate to that imposed in similar cases." Reddix v. State, 381 So.2d 999, 1013 (Miss. 1980).
The majority now claims that we have changed our opinion in light of crimes and defendants which did not exist in 1980 but have come before the Court in the seven years since. Such a diametric reversal is simply illogical. Precedent and common sense dictate that proportionality be measured as of the time of the direct appeal just as crimes are defined under the status of the law at the time of their commission. I find no legal authority for the majority's venture into indefinite proportionality analysis but can see clearly the chaos toward which such an approach leads us. I strongly dissent from that portion of the majority opinion which holds this case subject to any form of proportionality analysis. To hold otherwise transcends the review we are bound to make and creates what can only be described as "retroactive proportionality," a concept heretofore foreign to our state's death penalty jurisprudence. In essence, the majority of the Court joins today to emasculate the proper function of "proportionality review" as mandated by our state statute. I submit that the majority urges us toward a system of review under which no death sentence will ever be final. [Bullock v. State, 525 So.2d 764, 771 (Miss. 1987) (Lee, C.J., dissenting)]. Rather, each will be subject to a new and continuing proportionality analysis every time another death penalty is affirmed by this Court. I cannot see either the reason or necessity of such a system but suggest that the corresponding evils are apparent.
While I remain adamantly opposed to any proportionality review of this case, I am compelled to comment briefly on another predominant theme in the majority opinion, i.e., Reddix' conduct is on the minimal end of the scale of criminal conduct in those death cases which have come before us. Even in a proper instance of proportionality review, we do not engage in assessing whether a crime is more or less egregious than other crimes. We look only to whether the death sentence is consistent with that given in similar cases. We have already held that Reddix' participation in the crime "was as much a part of Jones' bludgeoning the victim as if appellant had physically restrained him while his head was being crushed." Reddix v. State, 381 So.2d at 1012. Surely the facts of the crime and extent of Reddix' participation in it have not radically changed in the time since nine members of this Court so found. I see little in the actions of Reddix to distinguish them from the conduct we found to merit the death penalty in Leatherwood v. State, 435 So.2d 645 (Miss. 1983). In fact, the Court upheld Leatherwood's death sentence because he held and incapacitated the victim and allowed another to commit the murder. This is exactly what *800 Reddix did by diverting the victim's attention to better facilitate Jones' fatal blows to his head.
Finally, I submit that we should in no way consider co-defendant Larry Jones' sentence in determining the appropriateness of Reddix' sentence. Proportionality analysis has heretofore been limited to those cases in which a death sentence was actually levied and does not include cases such as Jones' which have dropped from the system, whether from plea bargain, acquittal or conviction of a lesser offense. Wiley v. State, 484 So.2d 339 (Miss. 1986); Gray v. State, 472 So.2d 409 (Miss. 1985); Jordan v. State, 464 So.2d 475 (Miss. 1985). Additionally, we have repeatedly dismissed any notion that the sentence received by a co-defendant is an important factor in the proper sentence of another defendant. Stringer v. State, 500 So.2d 928 (Miss. 1986); Johnson v. State, 477 So.2d 196 (Miss. 1985).
It is clear that the majority has reached its goal  the nullification of a valid death sentence. In the process, the majority has blurred the proper focus of proportionality review and rendered meaningless our well-established view that proportionality reversals are extremely rare. Williams v. State, 445 So.2d 798 (Miss. 1984); Edwards v. State, 441 So.2d 84 (Miss. 1983); Coleman v. State, 378 So.2d 640 (Miss. 1979). In a sense, the majority's handling of Reddix' sentence is indeed rare and unique in that it disregards one of our more fundamental tenets of law  that cases are decided pursuant to controlling legal principles.
For the reasons stated above, I dissent to the majority opinion and vote to reinstate the sentence of death imposed upon Willie Reddix almost a decade ago.
SULLIVAN, J., joins this dissent.
NOTES
[1] The full text of Reddix' confession can be found in Reddix v. State, 381 So.2d 999, 1002-03 (Miss. 1980).
[1] The record does reflect that Reddix did not assault the victim, but it was his accomplice Jones.