635 So.2d 789 (1993)
Bobby Glen WILCHER
v.
STATE of Mississippi.
Nos. 03-DP-0032, 03-DP-0037.
Supreme Court of Mississippi.
October 7, 1993.
Rehearing Denied March 17, 1994.
James W. Craig, Jackson, for petitioner.
Michael C. Moore, Atty. Gen., Marvin L. White, Jr., Asst. Atty. Gen., Charlene R. Pierce, Sp. Asst. Atty. Gen., Jackson, for respondent.
En Banc.

ON MOTION AND APPLICATION FOR LEAVE TO FILE MOTION TO VACATE DEATH SENTENCE

PRATHER, Presiding Justice, for the Court:

I. PROCEDURAL HISTORY
Bobby Glen Wilcher's two convictions and sentences of death were first considered by this Court separately and affirmed in Wilcher v. State, 448 So.2d 927 (Miss. 1984), cert. denied 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160 (1984), and Wilcher v. State, 455 So.2d 727 (Miss. 1984), cert. denied 470 U.S. 1034, 105 S.Ct. 1411, 84 L.Ed.2d 794 (1985). Wilcher's cases were consolidated for this Court's first consideration of his petitions for post-conviction relief, and were denied in Wilcher v. State, 479 So.2d 710 (Miss. 1985), cert. denied 475 U.S. 1098, 106 S.Ct. 1501, 89 L.Ed.2d 901 (1986). He then filed a petition for habeas corpus in the United States District Court for the Southern District of Mississippi, which denied relief on June 19, 1990. However, the Fifth Circuit Court of Appeals reversed that denial and ordered that the District Court "issue the writ unless the State of Mississippi initiates in a reasonable time proceedings in state courts appropriate under Clemons."[1] That Court affirmed the *790 District Court's denial of relief on other issues. Wilcher v. Hargett, 978 F.2d 872 (5th Cir.1992). On May 16, 1991, Wilcher filed a second Application for Leave to File Motion to Vacate Death Sentence with this Court, seeking relief on one issue only, that the sentencing instructions foreclosed the jury's proper consideration of mitigating circumstances. This is one of the issues on which the Fifth Circuit affirmed the District Court. The application has not yet been acted on by the Court.
On January 28, 1993, the State filed a Motion to Reconsider, through which it asks this Court engage in a harmless error analysis on the Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) and Clemons issue already decided against the State in the federal habeas corpus action. The State recognizes that this Court has already held in several cases that it would not engage in harmless error analysis on the Maynard/Clemons issue, but asks this Court to reconsider those holdings.
Wilcher did not respond to the State's motion within the seven days allowed by Miss.Sup.Ct.R. 27, but instead responded by filing a Motion for Establishment of Briefing Schedule on State's Motion to Reconsider Imposition of Death Sentence on February 16, 1993. Wilcher claims in this motion that the proper course of action for this Court to take at the present time is to remand to the trial court for resentencing, citing Irving v. State, 618 So.2d 58 (Miss. 1992); Gilliard v. State, 614 So.2d 370 (Miss. 1992); Pinkney v. State, 602 So.2d 1177 (Miss. 1992); Jones v. State, 602 So.2d 1170 (Miss. 1992); Shell v. State, 595 So.2d 1323 (Miss. 1992); and Clemons v. State, 593 So.2d 1004 (Miss. 1992). However, Wilcher asserts that if the Court wishes to reconsider the issue of harmless error analysis, the Court shall set a briefing schedule which will allow him to respond to the State's contention that this Court may do so.

II. ANALYSIS
In spite of our previous refusals to engage in harmless error analysis on the issue of the "especially heinous, atrocious or cruel" jury instruction, the State asks again that this Court perform that task. The issue presented by the State's motion has been decided in Irving v. State, 618 So.2d 58 (Miss. 1992); Gilliard v. State, 614 So.2d 370 (Miss. 1992); Pinkney v. State, 602 So.2d 1177 (Miss. 1992); Jones v. State, 602 So.2d 1170 (Miss. 1992); Shell v. State, 595 So.2d 1323 (Miss. 1992); and Clemons v. State, 593 So.2d 1004 (Miss. 1992). We cannot do so, for reasons which we will attempt to clarify.
The United States Supreme Court's decision in Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) held that either appellate reweighing of aggravating or mitigating circumstances or harmless error analysis were permissible under the federal Constitution's Eighth Amendment, but that it was incumbent upon the Mississippi Supreme Court to interpret state law as to whether to perform such analysis. This Court holds that the basis for our decision not to reweigh based on Miss. Code Ann. § 99-19-101 (Supp. 1993) has been made abundantly clear in Clemons on remand and the other cases cited above. However, this Court clarifies the basis for our refusal to perform harmless error analysis, which rests on both independent state law and federal law grounds.
Were this Court now to engage in harmless error analysis after conceding that § 99-19-101 requires that the jury make the weighing of aggravating and mitigating factors, we would run afoul of the United States Supreme Court's Clemons decision. In a portion of that opinion which we have heretofore not discussed, the Court rejected Clemons' argument based on Hicks v. Oklahoma, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), that appellate reweighing would violate federal due process requirements because *791 the State statute requiring that the jury perform the weighing would not be complied with. The Court stated that:
[W]e have recognized that when state law creates for a defendant a liberty interest in having a jury make particular findings, speculative appellate findings will not suffice to protect that entitlement for due process purposes. Hicks v. Oklahoma, 447 U.S. 343 (1980).
.....
Contrary to the situation in Hicks, the state court in this case, as it had in others, asserted its authority under Mississippi law to decide for itself whether the death sentence was to be affirmed even though one of the two aggravating circumstances on which the jury had relied should not have been or was improperly presented to the jury. The court did not consider itself bound in such circumstances to vacate the death sentence and to remand for a new sentencing proceeding before a jury. We have no basis for disputing this interpretation of state law, which was considered by the court below to be distinct from its asserted authority to affirm the sentence on the ground of harmless error and which plainly means that we must reject Clemons's assertion that he had an unqualified liberty interest under the Due Process Clause to have the jury assess the consequence of the invalidation of one of the aggravating circumstances on which it had been instructed.
Clemons v. Mississippi, 494 U.S. 738, 746-47, 110 S.Ct. 1441, 1447-48, 108 L.Ed.2d 725, 737 (1990) (emphasis added).
The federal court's decision was plainly based on this Court's erroneous decision in Clemons I, 535 So.2d 1354 (Miss. 1988), motion granted and cert. granted in part, 491 U.S. 904, 109 S.Ct. 3184, 105 L.Ed.2d 693 (1989), and vacated, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) in which this Court did not address the issue of Miss. Code Ann. § 99-19-101. In Clemons II, 593 So.2d 1004 (Miss. 1992), this Court held that, under Miss. Code Ann. § 99-19-101 (Supp. 1991), only the jury can weigh the aggravating circumstances. The inescapable conclusion is that, due to our recognition that only the jury can perform the weighing task, were Clemons' due process claim once again before the United States Supreme Court, it would carry the day.
The importance of this discussion to the question of harmless error analysis is clear. This Court cannot logically, either as a matter of state or federal law, distinguish how we can perform harmless error analysis without reweighing. This Court agrees that "a court reviewing a death sentence in which the weighing process has been skewed may not simply apply a limiting construction to the factor that has skewed the weighing, but must also reconsider the entire mix of aggravating and mitigating circumstances presented to the jury." Wiley v. Puckett, 969 F.2d 86 (5th Cir.1992) (citing Stringer v. Black, 503 U.S. ___, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992)).
This is particularly so in view of our own Constitution. Article 3, § 26 affords criminal defendants in this state the right to trial by jury, while Art. 3, § 14 affords the right to due process of law. Although criminal defendants in this State generally have no right to be sentenced by the jury, where a specific statute provides such a guarantee, such as § 99-19-101 (Supp. 1992), these two constitutional provisions operate together to elevate the statutory right to one of constitutional significance which this Court cannot abridge by applying harmless error analysis, whether by disregarding entirely the invalid circumstance or by applying a limiting construction.

III. CONCLUSION
Miss. Code Ann. § 99-19-101 (Supp. 1993) prevents this Court from performing either reweighing or harmless error analysis as a matter of state law. Therefore, the defendant's motion for leave to file a second post-conviction petition is granted; the motion to vacate the death sentence is also granted. This Court remands these cases to the Circuit Court of Scott County for new sentencing hearings.
MOTION FOR LEAVE TO FILE POST-CONVICTION PETITION GRANTED; MOTION TO VACATE DEATH SENTENCE GRANTED; MOTION TO SET *792 BRIEFING SCHEDULE DISMISSED AS MOOT AND, CASES REMANDED TO CIRCUIT COURT OF SCOTT COUNTY FOR NEW SENTENCING HEARINGS.
HAWKINS, C.J., and SULLIVAN, BANKS and McRAE, JJ. concur.
McRAE concurs with separate opinion joined by HAWKINS, C.J., and SULLIVAN and BANKS, JJ.
SMITH, J., dissents with separate opinion joined by JAMES L. ROBERTS, Jr., J., DAN M. LEE, P.J., concurs in parts II and III.
DAN M. LEE, P.J., dissents with separate opinion.
PITTMAN, J., not participating.
McRAE, Justice, concurring:
While I agree with, desire, and seek finality of a judgment as soon as possible, that finality must be balanced with the necessity of a fair trial, not a perfect trial  but a trial by a jury in death penalty cases pursuant to Art. 3, § 26 of our State constitution. I agree with the majority's decision to remand this matter to the circuit court for a new sentencing hearing before a jury.
I reach this conclusion only after a thorough search of the pertinent case law and a review of our constitution and statutes involving sentencing procedures to determine punishment in capital cases. After making such an inquiry, one must conclude that only a jury has the power to sentence a person to death  not a judge; not an appellate court.
Art. 3, § 26 of our constitution states:
In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, to demand the nature and cause of the accusation, to be confronted by the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in all prosecutions by indictment or information, a speedy and public trial by an impartial jury of the county where the offense was committed; ... .
Our sentencing statute for capital cases, Miss. Code Ann. § 99-19-101 (1972), specifically states that only the jury has the authority to determine the death penalty. If there is not a unanimous verdict, the trial court shall sentence that person to life imprisonment. This is so even when the defendant waives his right to a trial by jury, or pleads guilty. A judge cannot sentence a person to death. A jury is required. Miss. Code Ann. § 99-19-101(1) states:
If the trial jury has been waived, or if the defendant pleaded guilty, the sentencing proceeding shall be conducted before a jury empaneled for that purpose.
It further provides that the jury is required to make specific written findings before it can return a death sentence. If even one juror fails to agree, the trial court shall impose a life sentence.
In the sentencing phase, a jury is not determining guilt or innocence, but deciding a sentencing issue under specific instructions enumerated in § 99-19-101, et seq. By statute, the jury is instructed that before it can return a death sentence, it must hear all evidence, as well as arguments of the prosecuting attorney, and the defendant and/or his counsel. It must, after proper instruction, deliberate and render a verdict based upon the facts beyond a reasonable doubt, and submit in writing its findings, clearly supported by the evidence. After hearing all evidence, the jury shall deliberate and render a verdict based on the following considerations: (1) whether at least one aggravating factor has been proved as enumerated in the instruction; (2) whether sufficient mitigating factors exist which outweigh any aggravating factor or factors found to exist; and (3) based on the consideration in sub-paragraphs (1) and (2) above whether the defendant should be sentenced to death or life imprisonment. Miss. Code Ann. §§ 99-19-101(2)(a)-(d).
In any given case, therefore, it may take more than one aggravating factor to offset a mitigating factor. However, without any mitigating factors, the existence of only one aggravating factor, found beyond a reasonable doubt, is needed to impose the death penalty. A jury does not add or subtract aggravating and mitigating factors when considering the imposition of the death penalty. *793 It must first find and determine unanimously that at least one aggravating factor exists before imposing the death penalty. However, our statute specifies that even if there is only one mitigating factor, it may offset not only one, but two or four or six or eight or any number of aggravating factors. The weight of the mitigation to be applied to the aggravating factor or factors is left solely in the hands of the jury. If the verdict is not unanimous, then there is no choice but imposition of a life sentence.
In order to avoid a violation of the eighth amendment to the United States Constitution, all mitigating evidence must be admitted. See McKoy v. North Carolina, 494 U.S. 433, 441-43, 110 S.Ct. 1227, 1233, 108 L.Ed.2d 369 (1990); Mills v. Maryland, 486 U.S. 367, 384, 108 S.Ct. 1860, 1870, 100 L.Ed.2d 384 (1988).
In Mills, the United States Supreme Court stated:
Under our decisions, it is not relevant whether the barrier to the sentencer's consideration of all mitigating evidence is interposed by statute, Lockett v. Ohio [438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973] supra, Hitchcock v. Dugger, 481 U.S. 393 [107 S.Ct. 1821, 95 L.Ed.2d 347] (1987); by the sentencing court, Eddings v. Oklahoma [455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1] supra; or by an evidentiary ruling, Skipper v. South Carolina, [476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1] [1986], supra. The same must be true with respect to a single juror's holdout vote against finding the presence of a mitigating circumstance.
486 U.S. at 375, 108 S.Ct. at 1865-66, 100 L.Ed.2d at 394.
Based on Mills v. Maryland, the Supreme Court of Colorado held in People v. Rodriguez, 794 P.2d 964 (Colo. 1990):
The constitutional problem with instructing the jury that it must be unanimous with respect to the mitigating factor was illustrated by the Court with two hypothetical situations. In the "hold-out" juror hypothetical, all but one of the jurors are convinced that six relevant mitigating factors exist. However, because of the unanimity requirement in determining the appropriateness of the death penalty, cannot give any effect to the mitigating factors they have found if even one juror concludes that no mitigating factors exist. [Mills] at 373-74, 108 S.Ct. at 1864-65.
In the second hypothetical, all twelve jurors agree that mitigating circumstances exist, but all twelve cannot agree on the same mitigating circumstances. The Court concluded that "it would certainly be the height of arbitrariness to allow or require the imposition of the death penalty under [these hypothetical] circumstances... ." Id. at 374, 108 S.Ct. at 1865.
794 P.2d at 980.
In the case sub judice, the jury was required by statute to be specifically instructed that it must take its deliberation by steps. The first step was to consider whether one or more statutory aggravating factors was present. Each of those aggravating factors had to be specifically laid out for the jury to consider, and only those aggravating factors could be considered. After reaching a unanimous verdict on each of the aggravating factors considered, it must list those factors in writing on the jury form. Then the jury must look at the mitigating factor or factors. It may not do a "number count," adding or subtracting the aggravating and mitigating factors. Instead, the jury must weigh or balance these factors. If, in even only one juror's mind, that single mitigating factor outweighs all five, six, or ten aggravating factors, then it must impose a life sentence.
My colleague, Justice Smith, believes that an appellate court may reweigh the aggravating and mitigating factors. However, this thrusts us into the role of thirteenth juror, which is not our job. Through our legislators, society has placed that responsibility in the hands of the jury. So strongly committed were our forefathers to the notion that the jury was the ultimate finder of fact, they vested that power in the people through our constitution.
Moreover, if the argument is raised that a jury has found an invalid aggravating factor, coupled with one, two or many mitigating factors, it is difficult, if not impossible for an appellate court to delve into the minds of the *794 twelve individual jurors and determine that that particular aggravating factor did not help to outweigh the mitigating factors.
Justice Smith, in his dissent, puts great reliance upon our sister state of Alabama's interpretation of its death penalty cases in Lawhorn v. State, 581 So.2d 1159 (Ala.Cr. App. 1990), aff'd Ex Parte Lawhorn, 581 So.2d 1179 (Ala. 1991). However, the Alabama constitution and statute differs from ours, and may allow a harmless error element since the judge is the actual sentencer, not the jury. The jury verdict is only a guide and does not have to be unanimous. In Lawhorn, the jury returned a death sentence upon an 11-1 verdict. The Alabama constitution allows the judge to be the final sentencer. Mississippi's does not.
Under our constitution and our laws, it becomes quite obvious that appellate judges do not have the power to impose the death penalty. The jury, that conscience of our community, is the sole judge of the facts. Only after seeing the defendant and the witnesses, hearing arguments of the defendant and/or his counsel and the prosecutor, and receiving instructions from the court given pursuant to our constitution and laws, can the jury impose a death sentence. While the United States Supreme Court has held that courts may reweigh the jury's findings under the United States Constitution, it did not look at the Mississippi Constitution, which we are compelled to follow. The right to a trial by jury is inviolate, particularly in those cases where the death penalty is sought.
HAWKINS, C.J., and SULLIVAN and BANKS, JJ., join this opinion.
SMITH, Justice, dissenting:
On March 5, 1982, Bobby Glen Wilcher, by trickery and deceit, kidnapped and murdered two Scott County, Mississippi, women, Velma Odell Noblin and Katie Bell Moore. He robbed Velma Noblin of a watch, two rings and a necklace. The jewelry was later recovered by law enforcement officers in Wilcher's room at his father's house.
Wilcher was stopped for a speeding violation in the early morning hours of March 6, driving a vehicle belonging to one of the victims. The officer observed two women's purses on the front seat and a black bra on the back seat. Wilcher was covered with blood. Wilcher told the officer he was hurrying to the hospital for treatment of a cut finger and requested the officer to escort him. Wilcher's nicked thumb was treated at the hospital by applying a band-aid. Wilcher subsequently confessed to the two murders and was convicted and sentenced to death in separate trials by separate juries of both murders.
The majority opinion has set out the long and tedious process of appellate review of these convictions as they progressed through this Court, the United States Federal District Court, the Fifth Circuit Court of Appeals, and the United States Supreme Court.

I.

REWEIGHING
Once again, the majority adheres to its view espoused in Clemons v. State, 593 So.2d 1004 (Miss. 1992), that this Court is without authority to reweigh aggravating circumstances in capital death cases for two clear reasons: (1) "Only the jury, by unanimous decision, can impose the death penalty; (2) as to aggravating circumstances, this Court only has the authority to determine whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance." The majority holds that there is no authority for this Court to reweigh the remaining aggravating circumstances when it finds one or more to be invalid or improperly defined. Further, the majority believes that finding aggravating and mitigating circumstances, weighing them, and ultimately imposing a death sentence, by statute, should be left to a properly instructed jury.
This Court, prior to Clemons, has made factual determinations of aggravating and mitigating factors in death penalty cases. Initially, this Court considered the issue of reweighing in Bullock v. State, 525 So.2d 764 (Miss. 1987). In Bullock, consideration of the Enmund requisites was analyzed in determining whether Bullock: (1) killed, (2) attempted to kill, (3) or intended that a killing take place or that lethal force be used. This *795 Court cannot deny that all three of these factors for analysis are "issues of factual findings." Therefore, the analysis by the Court was a reweighing of facts.
Reweighing of aggravating and mitigating factors was carried out in the process of appellate review in Johnson v. State, 547 So.2d 59 (Miss. 1989). In Johnson, the Court stated:
There are two courses open to this Court: (1) remand this cause to the circuit court of Pike County for another sentencing hearing, or (2) make the decision ourselves as to whether to reimpose the death penalty or reduce Johnson's sentence to life because of the invalidation of this aggravating circumstance which was considered by the original trial jury.
As Cabana v. Bullock makes clear, there is no United States Constitutional requirement that "a jury consider the appropriateness of a capital sentence." 474 U.S. [376] at 386, 106 S.Ct. [689] at 696-97, 88 L.Ed.2d [704 at] 716.
547 So.2d at 60.
The Clemons Court found itself in a "Catch 22" situation. The only way out was to overrule Johnson. In Clemons, 593 So.2d at 1006, this Court stated:
In the more recent case of Johnson v. State, 547 So.2d 59, 60 (Miss. 1989), we claimed that this Court can make the decision as to whether or not to uphold a death sentence without remanding to the trial court for a jury finding. Our opinion is not clear as to whether or not we made this claim with regard to our authority as a matter of state law to reweigh or with regard to our ability to conduct a harmless error analysis. In the end, we determined that where two of three aggravating circumstances were found invalid, a jury should reconsider Johnson's sentence. Id. at 61. Any indication or implication we may have given in Johnson as to our authority under state law to reweigh in the face of an invalid or improperly defined aggravating circumstance in order to uphold a death sentence is hereby overruled.
In Johnson, this Court found that the state Supreme Court was not constitutionally required to remand a case to another sentencing jury after the United States Supreme Court determined that an invalidated conviction could not be used as an aggravating circumstance for death penalty. 547 So.2d at 60. Johnson was not in need of clarity by the Clemons Court. The case was crystal clear. The Clemons majority saw that Johnson was in need of being overruled and that is exactly what they did.
The three opinions in Johnson (majority, concurring and dissenting) illustrate with remarkable clarity that each recognized the importance of their respective opinions, and how that opinion would be perceived and interpreted. The Johnson opinions are not ambiguous, but rather are concise, well-reasoned opposite positions. We consider Justice Robertson's concurring opinion for insight as to the clarity of the Johnson decision from his perspective: "It may be true that there is no constitutional imperative that a death sentence may be imposed only by a jury, but it is surely mandated that responsibility for weighing and balancing the aggravating and mitigating circumstances be vested in that legal body which possesses the sentencing power." 547 So.2d at 62.
If further clarity is required in Johnson, one need not look further than Chief Justice Roy Noble Lee's dissent:
Questions in Bullock equivalent to the ones now facing the Court were resolved by the Court without remanding the case to a lower court for consideration by a jury.
In discussing Johnson v. Mississippi, supra, which remanded the case here for further consideration, the majority opinion in the case sub judice aptly notes the concurring opinion of Justice White as follows:
.....

It is left to the Mississippi Supreme Court to decide whether a new sentencing hearing must be held or whether that court should itself decide the appropriate sentence without reference to the inadmissible evidence, thus undertaking to reweigh the two untainted aggravating circumstances *796 against the mitigating circumstances. Cf. Cabana v. Bullock, 474 US 376, 88 LEd2d 704, 106 SCt 689 (1986).

486 U.S. at [591], 108 S.Ct. at 1989, 100 L.Ed.2d at 588. (Emphasis added)
I would follow the teachings of Cabana v. Bullock, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986); Bullock v. State, 525 So.2d 764 (Miss. 1987); and Justice White's concurring opinion in Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). In my opinion, the Mississippi Supreme Court should proceed to reweigh the two untainted aggravating circumstances against the mitigating circumstances upon the record before us, and I would not remand to the lower court.
547 So.2d at 62.
The Johnson Court opinion was abundantly clear. That court reweighed issues as did the Court in Bullock. The Court authorized reweighing in Johnson and overruled it in Clemons.
We are mandated by statute to carefully examine death penalty cases under heightened scrutiny, to ascertain that all defendants receive fair and impartial trials with all statutory and constitutional guaranteed rights of due process afforded, safeguarded and applied when required. We must, by statute, conduct sentence review in addition to direct appeal on all death penalty cases. Miss. Code Ann. § 99-19-105 (1992), in part states:
(2) The Mississippi Supreme Court shall consider the punishment as well as any errors enumerated by way of the appeal.
(3) With regard to the sentence, the court shall determine:
(a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
(b) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in Section 99-19-101; and
(c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
(4) Both the defendant and the state shall have the right to submit briefs within the time provided by the court, and to present oral argument to the court.
(5) The court shall include in its decision a reference to those similar cases which it took into consideration. In addition to its authority regarding correction of errors, the court, with regard to review of death sentences, shall be authorized to:
(a) Affirm the sentence of death; or
(b) Set the sentence aside and remand the case for modification of the sentence to imprisonment for life.
(6) The sentence review shall be in addition to direct appeal, if taken, and the review and appeal shall be consolidated for consideration. The court shall render its decision on legal errors enumerated, the factual substantiation of the verdict, and the validity of the sentence.
Sentence review is nothing short of a judicial reexamination of the proceedings of a lower tribunal by a higher one. Reweighing is simply weighing anew. Obviously, the two terms are somewhat similar. Regardless, it is clear that § 99-19-105 requires review separate from a direct appeal, albeit the two are consolidated for consideration. There is convincing argument that a portion of this review is a one-time affair, aimed entirely at proportionality. Whether one time or more, the fact remains, we review and reweigh every death penalty case that comes before this Court, separate from the direct appeal. Authorized to review one time, we can certainly review again as may be appropriately required. However, other parts of the statute clearly refer to review of sufficiency of the evidence, factual aggravators, punishment, and errors by way of appeal.
This further establishes the State statutory authority of this Court for reweighing and review of death cases, in addition to constitutional authority, allowed by the United States Supreme Court in Clemons. In reviewing and reweighing, this Court may affirm a death sentence, or set the sentence aside and remand for modification of the sentence to life imprisonment. We may also reverse and remand for a new trial or reverse and render a case. The essential, mandatory element *797 for review or reweighing is that, prior thereto, a jury has returned a sentence of death in the case being reviewed. Mississippi law requires that only a jury can impose a sentence of death. This Court is not imposing when after review, we affirm a death sentence. Except for a different criteria and heightened scrutiny, we may affirm death sentences just as we may affirm life sentences.
After the opinion of the United States Supreme Court, leaving a critical decision to the Mississippi Supreme Court, this Court found itself at the fork of the road in Clemons. The Clemons Court veered to the left fork, an erroneous choice; most assuredly they should have made a sharp right.
It becomes obvious that appellate judges should, by their very nature and job description, become experts at weighing and reweighing sufficiency of evidence, because they are required to do just that in every single criminal case that is appealed. Appellate judges review literally hundreds, sometimes thousands, of cases with every conceivable issue known to jurisprudence. Common sense indicates that they should be better qualified to weigh evidence to determine its sufficiency, as compared to jurors, who rarely serve on a jury more than once or twice in a lifetime.
Chief Justice Roy Noble Lee's dissent in Clemons adheres to this same view:
It is a routine task of the appellate courts to decide whether the evidence supports a jury verdict and in capital cases in "weighing" States, to consider whether the evidence is such that the sentencer could have arrived at the death sentence that was imposed... . It is also important to note that state supreme courts in States authorizing the death penalty, may well review many death sentences and that typical jurors, in contrast will serve on only one such case during their lifetimes.
593 So.2d at 1009.
The next obvious question is whether the intervening decisions of Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) and Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), would have actually adversely affected the outcome of Wilcher's sentence, assuming one agrees that these two cases are intervening decisions. In actuality, they are not intervening decisions at all; the legal concept stated in Clemons has existed since Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), and this is true, Gilliard v. State, 614 So.2d 370 (Miss. 1992) notwithstanding. Wilcher could have availed himself of this legal concept at the trial level since Godfrey has existed since 1980. Most certainly he could have raised the issue on his first automatic review or "PCR" before this Court. He did not, and should not prevail at this late date. This Court was incorrect in holding Maynard and Clemons to be intervening decisions. Both case decisions were simply a reaffirmance and strengthening of the concept first established in Godfrey.

II.

HARMLESS ERROR ANALYSIS
The United States Supreme Court remanded the Clemons case back to this Court because our decision was unclear regarding the basis for upholding the death sentence. The majority on remand specifically declared, as a matter of law, that this Court had no authority to reweigh; however, the Court left open the possibility that it might undertake harmless error analysis in the appropriate case. The Court eschewed harmless error in Clemons, Shell v. State, 595 So.2d 1323 (Miss. 1992), Jones v. State, 602 So.2d 1170 (Miss. 1992), Pinkney v. State, 602 So.2d 1177 (Miss. 1992), Gilliard v. State, 614 So.2d 370 (Miss. 1992), and Irving v. State, 618 So.2d 58 (Miss. 1992).
Regardless, this Court had refused, up until the case sub judice, to declare it had no authority to engage in harmless error analysis reviewing a death sentence imposed by a jury. In fact, this Court has engaged in harmless error analysis in each of the cases, Clemons, Shell, Jones, Pinkney, Gilliard and Irving but could not find beyond a reasonable doubt that the juries in those cases would have imposed the death penalty without the unconstitutional aggravator. The Court inexplicably stated in each case that it *798 was not engaging in harmless error analysis after stating that it could not say beyond a reasonable doubt that the verdict would have been the same either without the invalid aggravator or had the invalid aggravator been properly defined. Clemons, 593 So.2d at 1097; Shell, 595 So.2d at 1325; Jones, 602 So.2d at 1173; Pinkney, 602 So.2d at 1179; Gilliard, 614 So.2d at 9; Irving, 618 So.2d at 62. The bottom line is that the majority of the Court in these cases did exactly what it said it had no authority to do. It engaged in harmless error analysis.
The basic test for harmless error in the federal constitutional realm goes back to Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 710 (1967). The Chapman test is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (quoted in Yates v. Evatt, 500 U.S. 391, 392, 111 S.Ct. 1884, 1886, 114 L.Ed.2d 432, 448 (1991)). The Yates Court further clarified that the inquiry is not whether the jury considered the improper evidence or law at all, but rather, whether that error was "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." Yates, 500 U.S. at 403, 111 S.Ct. at 1887, 114 L.Ed.2d at 449.
In the case sub judice, the majority, in an attempt to extend the Clemons' Court position, holds that Miss. Code Ann. § 99-19-101 (1992) prevents this Court from performing either reweighing or harmless error analysis as a matter of state law. The majority adopts this new position in spite of stating in Clemons, Shell, Jones, Pinkney, Gilliard and Irving that they were leaving open consideration of the harmless error analysis for appropriate cases. We should, as a minimum in the case-at-bar, hold open in accordance with prior decisions continued authority for this Court to apply harmless error analysis to appropriate cases. The majority apparently believes, regardless of the number of remaining valid aggravating circumstances in a particular case, the "appropriate" case simply does not exist. Equally disturbing is the majority's holding that reweighing and harmless error are one in the same by definition.
Since the United States Supreme Court has allowed state supreme courts, where the states have death penalty laws such as Mississippi's, to reweigh and consider applying harmless error to sentencing phases of capital death cases, several states have addressed this issue differently.
In People v. Rodriguez, 794 P.2d 965, 983-84 (Colo. 1990), the Colorado Supreme Court held:
The fact that the jury was instructed on, and found, an invalid statutory aggravating factor does not require that we vacate the defendant's sentence, however, if we can conclude that the error was harmless beyond a reasonable doubt. Clemons v. Mississippi, ___ [494] U.S. ___ [751], 110 S.Ct. at 1450, 108 L.Ed.2d 725... .
Similarly, we believe that the jury, given the facts and circumstances of this case, would have found that the murder was "conscienceless or pitiless, and [was] unnecessarily torturous to the victim." Lorraine Martelli was kidnapped off the streets of Denver in her own car, driven around for hours, repeatedly raped, sodomized, beaten and humiliated. She was ultimately murdered in a manner indicating that the defendant intended to torture her before she died. We conclude that the error in failing to give the proper limiting instruction in this case was harmless beyond a reasonable doubt.
In the case at bar, Wilcher kidnapped Velma Noblin and Katie Moore off the streets of Forest, Mississippi, robbed one of small amounts of insignificant jewelry, and was riding around in one of the victim's cars when stopped by a law enforcement officer. Although covered in blood, Wilcher exhibited cool, calm, calculated and conscienceless reasoning evincing little regard for human life, when he attempted to get the officer to follow him to the hospital for treatment of what turned out to be a minor nick on his thumb. This maneuver was deliberately designed to throw off law enforcement officials and avoid detection of these crimes of robbery and murder.
These two innocent, unsuspecting women were simply giving Wilcher a ride home. He robbed Odell Noblin of jewelry at knife point. *799 Katie Moore stepped back, and he stabbed her 5 or 6 times. Odell Noblin saw all of this, turned and attempted to flee, but was caught by Wilcher and stabbed 20 times. According to testimony at trial, there were on Noblin's hands and arms numerous defensive cuts incurred in her attempt to fend off Wilcher. Odell Noblin was left where she fell, to bleed to death, beside the roadway in a ditch. One becomes hard pressed to say that the murders were not conscienceless or pitiless, and unnecessarily torturous to the victims. This Court has approved an "especially heinous" finding in cases where the victim has suffered a painful, lingering death. See Billiot v. State, 454 So.2d 445 (Miss. 1984) (victim found alive and gasping for air after skull had been bashed in twice with a blunt instrument); Bullock v. State, 391 So.2d 601 (Miss. 1980) (victim was beaten over the head with a concrete block and dumped into a lake); Larry Jones v. State, 381 So.2d 983 (Miss. 1980) (seventy year old victim died several hours after being beaten over the head); Tokman v. State, 435 So.2d 664 (Miss. 1983) (taxicab driver was pulled to the back seat of his cab by a rope around his neck, struggled for several minutes and was not killed until bludgeoned to death with a knife); Voyles v. State, 362 So.2d 1236 (Miss. 1978) (victim was beaten until unconscious at which point the defendant ran over her body with the car and rolled the body into the river); Gray v. State, 375 So.2d 994 (Miss. 1979) (defendant sexually molested three year old victim and threw semiconscious victim into river). A finding that the victim was mentally tortured by fear of impending death has been held sufficient to justify the "especially heinous" aggravator. See Jordan v. State, 464 So.2d 475 (Miss. 1985) (kidnap victim terrified by the defendant); Evans v. State, 422 So.2d 737 (Miss. 1982) (victim knelt behind cash register with a gun to his head, forced to open register, then forced again to kneel on floor, where he was assaulted and shot); Bell v. State, 360 So.2d 1206 (Miss. 1978) (gas station attendant forced into car, robbed, driven to wooden area and killed "execution style"; finding of mental torture).
To say that Odell Noblin in particular suffered torture, as she fled for her life along the roadway, would be putting it mildly, considering she had just witnessed the murder of her best friend. This case meets the "appropriate" category this Court had in mind for application of harmless error analysis. Consequently, with the application of properly defined limiting construction and applying harmless error analysis, could it be not said beyond a reasonable doubt that the results of the jury would have been the same. It is certainly my view beyond a reasonable doubt that the results would be identical and that Wilcher should receive the penalty of death.
Alabama, a weighing state, but one where the jury only recommends to the judge the appropriate sentence, has also applied harmless error analysis. In Lawhorn v. State, 581 So.2d 1159 (Ala.Cr.App. 1990), aff'd Ex Parte Lawhorn, 581 So.2d 1179 (Ala. 1991), the jury was allowed to consider the "especially heinous" aggravator without a limiting instruction. The Court, following Clemons, engaged in harmless error analysis to the effect that the Court considered "whether beyond a reasonable doubt the result would have been the same had the circumstance been properly defined in the jury instructions." Lawhorn, 581 So.2d at 1177. The Court found that Lawhorn's behavior in killing Berry made it possible to find:
that, had the jury been properly instructed, it would still have returned a recommendation of death... . [T]he facts presented to the jury established, beyond any doubt, that this crime was especially heinous, atrocious, or cruel when compared to other capital offenses... . [H]ad the circumstances been properly narrowed, the jury would have recommended the same sentence and the trial court would have imposed the same sentence.
Id. Alabama has mandatory proportionality review as does Mississippi, but the Alabama Supreme Court had no trouble engaging in harmless error analysis and concluding that, with proper instructions, the recommendation of the jury would have been the same, that Lawhorn receive the penalty of death.
This Court is wrong to refuse to apply harmless error to death penalty sentences carte blanche after indicating on six previous *800 occasions that it might apply that analysis in certain appropriate capital death cases. Chief Justice Roy Noble Lee was correct in his dissents in Bullock, Johnson, Clemons, Pinkney, Jones, Shell and Gilliard. This Court should apply the principle of harmless error in cases where appropriate, and this case certainly meets that criteria.

III.

FINALITY OF CRIMINAL JUDGMENTS
There exists another problem with this case and the previous cited series of Mississippi cases: the issue of applying the principle of "finality of criminal judgments." Admittedly, the rules change mid-stream all too often. They have been changed by the United States Supreme Court, the Fifth Circuit Court of Appeals, the Federal District Court, and this Court. The Fifth Circuit Court of Appeals has told this Court that we have failed to consistently apply our state statutory bars. In fairness to this Court, however, we are also mandated to give individual, special scrutiny to death penalty cases and to weigh the proportionality of these cases in this jurisdiction. This mandated process occasionally fails to allow consistency because of the individualization required.
Regardless, there comes a point in proceedings when we must be able to say "it is finished." Respect for final judgments is a bedrock principle in the criminal justice system. We should insure that good faith interpretations of current, existing law, although legally debatable at the time it was utilized in rendering final judgments, are not later resurrected and used to overturn that final judgment. In Culberson v. State, 580 So.2d 1136 (Miss. 1990), we find the inescapable conclusion that all of the proceedings before the courts of the State of Mississippi were at an end for Culberson. This Court recognized the importance of finality of judgments and the adherence to that principle, thus ending the appellate proceedings upon the full litigation of all claims before this Court.
Wilcher committed two horrible crimes for which two different juries convicted and sentenced him to death. Wilcher has been afforded every conceivable constitutionally guaranteed right available to a citizen. He has received the benefit of examination of numerous issues raised on appeal by this Court, the Federal District Court, the Fifth Circuit Court of Appeals, and denial of certiorari by the United States Supreme Court. Most of these issues are totally barred by Mississippi law and some by the doctrine of res judicata. Wilcher attempts to get around consideration of finality, a legal concept intertwined within the doctrine of res judicata, which would normally preclude this repeated presentation and re-litigation of these same claims 10 years after his conviction. Wilcher has succeeded on his end run with the majority, claiming "intervening decisions," thus extraordinary circumstances, under Clemons.
Chief Justice Neville Patterson contributed significantly to this subject in Irving, when he opined:
Finally, while this petition is not frivolous, litigation must come to an end at some time. This case has been tried, reviewed, and combed over by two trial juries, at least four times by this Court, many times by the U.S. Supreme Court and U.S. District Court over a period of time exceeding ten years. By the Grace of God, when will this litigation be concluded?
498 So.2d 305, 320 (Miss. 1986). Chief Justice Patterson would be shocked that Irving continues going in full circle review, currently proceeding back for a third jury to again consider the death penalty, seven years after his opinion, and seventeen years after the capital murder was committed.
The issue of finality was raised by Presiding Justice Dan Lee in Irving, when he opined:
Clearly, the firmly established judicial concern for finality evidenced in such doctrines as res judicata is not to be lightly discounted. Especially in cases such as this where all factual issues have been established and re-established by way of multiple submissions to juries. I would deny Irving's duplicative petition for post-conviction relief. We as a Court have the power and the duty to bring this case to an *801 end at this point by denying Irving's petition.
618 So.2d at 63 (Lee, P.J. dissenting).
This case is a very serious, meritorious one, requiring detailed study and consideration of the issues. My greatest concern about cases such as Wilcher, as they repeat the circle of review in a seemingly never ending path, is the public's perception that justice is not being served in a timely manner by the judicial system. Failure to adhere to the principle of finality causes too many good people to demonstrate utter contempt of our system of justice, as well as disregard for our time weathered guaranteed constitutional rights. Some normally law abiding citizens unfortunately become vigilantes, taking matters into their own hands, ultimately serving as prosecutor, judge, juror and executioner. God forbid this hallowed system ever reach such a crisis point, where this is the general rule rather than the exception. Perception of our Court's fair and even handed disbursement of justice among our citizenry is of paramount importance in maintaining our great system of American jurisprudence. This case is an appropriate one in which to put some finality into practice.
Wilcher's repeated filing of successive petitions fails to overcome the requirements of Miss. Code Ann. § 99-39-27(9). The claims are barred under § 99-39-21. It is clear from Wilcher's application that he is not claiming that he has newly discovered evidence or that he is suffering from a supervening insanity. He pins his argument on the claim of intervening decision only.
Wilcher claims that the decisions in Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990), are decisions by the United States Supreme Court that "would actually adversely affect [] the outcome of his... . sentence." McKoy and Mills are not intervening decisions. On habeas review, the United States District Court denied relief on this claim. The district court found that Mills and McKoy did not apply to Wilcher's case. Also, the Fifth Circuit Court of Appeals spoke on this issue in Stringer v. Jackson, 862 F.2d 1108 (5th Cir.1988), pet. reh. and sugg. for reh. en banc denied, 866 F.2d 1417 (5th Cir.1989), finding that Mills was not an intervening decision. Stringer took this issue to the United States Supreme Court on petition for writ of certiorari, and by supplemental brief, added McKoy. Certiorari was granted in Stringer, but only on the Clemons v. Mississippi issue, which we submit that this Court was also incorrect in holding Clemons to be an intervening decision. This application should be denied.
This Court is qualified to conduct such reweighing of the sentencing phase, but as a minimum, is as equally or better qualified than a jury to apply limiting construction and reweigh or apply harmless error and finalize this case once and for all. Clemons notwithstanding, this Court has reweighed and reviewed in Bullock, Johnson, and every death penalty case appealed to this Court.
This Court should re-examine its majority view, as the State requests, and apply reweighing and/or harmless error analysis as the United States Supreme Court authorized in Clemons.
I dissent.
JAMES L. ROBERTS, Jr., J., joins this dissent, DAN M. LEE, P.J., concurs in parts II and III.
DAN M. LEE, Presiding Justice, dissenting:
I join parts II and III of the dissenting opinion authored by my brother Justice James W. Smith. I am convinced that his views on harmless error analysis and finality of judgment are correct. In proper cases, these legal concepts should act to prevent the automatic vacation of a death sentence by this Court. I also agree that this is a proper case.
I cannot join part I of Justice Smith's opinion. For reasons expressed often in our prior decisions, I do not believe that this Court should engage in a general reweighing of aggravating and mitigating circumstances.
NOTES
[1] In Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the United States Supreme Court focused on the effect that an invalid aggravating circumstance would have on the capital-sentencing determination in a state which weighed aggravating and mitigating circumstances. The United States Supreme Court held that there was no federal Eighth Amendment constitutional prohibition of an appellate court's reweighing the remaining valid aggravating factors and the mitigating evidence or employing a harmless error analysis and "salvag[ing] a death sentence." The federal court acknowledged that the Mississippi Supreme Court would have to interpret Mississippi law and how it would interact with permissible federal standards.