# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-00457-SCT

*WALTER THOMAS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/29/96 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF COAHOMA COUNTY |
| ATTORNEY FOR APPELLANT: | AZKI SHAH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  SCOTT STUART |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 4/30/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/27/98 |

**BEFORE PITTMAN, P.J., BANKS AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Walter Thomas appeals his conviction in the Circuit Court of Coahoma County for conspiracy to possess a controlled substance with the intent to transfer. He was sentenced to serve a term of five years under the supervision of the Mississippi Department of Corrections, with four years suspended. Aggrieved by the jury's verdict, Walter Thomas assigns the following as error:

> **I. WHETHER THE COURT VIOLATED THOMAS' RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSE WHEN HE WAS FOUND GUILTY OF CONSPIRACY.**

> **II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ADMITTING INTO EVIDENCE THE "VORTICE TAPE" IN VIOLATION OF THOMAS' RIGHT TO CONFRONT THE WITNESSES AGAINST HIM.**

¶2. After careful review of the record and briefs in this matter, this Court holds that Thomas' rights under the Double Jeopardy and the Confrontation Clauses were not violated and thus, affirms Thomas' conviction.

## STATEMENT OF THE FACTS

¶3. The genesis of this case is the recovery of three micro cassettes which were discovered in the execution of a search warrant in the early morning hours of September 21, 1995, by Randy Corbin of the Mississippi Bureau of Narcotics. The tapes recorded conversations between Walter Thomas, Henderson Clark, Henry Vortice, and Fontroy Allen occurring prior to March 28, 1995. The discovery of these tapes prompted the investigation which resulted in this prosecution. Walter Thomas ("Thomas") was a shift supervisor with the Clarksdale Police Department; Henderson Clark ("Clark") was an officer with the Clarksdale Police Department; Henry Vortice ("Vortice") was a State Trooper who had previously been an officer with the Clarksdale Police Department; and, Fontroy Allen ("Fontroy")was a local drug dealer. According to the testimony and evidence developed at trial, the following events occurred.

¶4. Vortice (state trooper) was evidently" shaking down" Fontroy (drug dealer) and involved Clark (police officer) in communications regarding the shake down. Fontroy, through Thomas (police officer), indicated that he did not have the money to pay on a weekly basis, but could be helpful in another way. At a meeting with Thomas and Clark, Fontroy told Thomas that he could "set somebody up." The plan was that Thomas and Vortice would stop the person who Fontroy "set up" and take his drugs. The target of this plan was a man named Dave (David Drummond), a Jamaican whom Fontroy had bought drugs from previously. This conversation was taped by Fontroy. Some time later, Fontroy called Dave and told him he wanted ten pounds of marijuana. A week to a week and one-half later, Fontroy told Clark that Dave was coming through with the drugs. Later that same evening, Fontroy met with Thomas and Vortice at a Pizza Hut and told them the route that Dave would be traveling. This conversation was also taped by Fontroy.

¶5. Thomas and Vortice stopped "a guy" and, according to Clark, made Fontroy pay them $1,000 because they found nothing. According to Fontroy, following the Pizza Hut meeting, he observed blue lights at a traffic stop and subsequently, Thomas brought him approximately eight and one/half pounds of marijuana, for which he, Fontroy, was to pay $3,000, in addition to the $1,000 he already owed the officers. Fontroy paid the $3,000 to Thomas and some ten days later paid $1,000 to Thomas.

¶6. After the meeting where Fontroy paid the $1,000, Fontroy, Thomas, and Vortice discussed another set-up. The target of this set-up was a guy called "Cuz", whose real name was Edgar Dickerson. According to Fontroy, he was to sell Cuz four pounds of marijuana, evidently to be then stolen by Thomas and Vortice. Fontroy again taped this meeting.

¶7. According to Fontroy, he sold the four pounds of marijuana to Cuz, as planned. Fontroy then called Thomas to tell him what kind of car Cuz and another person were driving. Fontroy stated that later that night he met with Thomas and Vortice who gave him four pounds of marijuana for which he paid them $2,000. Both Cuz and Zenles Newby, the passenger in Cuz's car, stated that they were stopped by a trooper and an officer, who at gunpoint, took the four pounds of marijuana, $350 from Newby and approximately $150 from Cuz. Neither was able to identify the officers who stopped them.

¶8. On September 21, 1995, a search warrant was executed on Fontroy's residence. During the course of the search, officers seized three microcassette tapes that contained conversations of

meetings between Fontroy and others, including Walter Thomas, the appellant. These conversations led the investigating officers to believe that Thomas was involved in the conspiracy.

¶9. Vortice was interviewed on September 27, 1995, by Sammy Aldridge of the Criminal Investigation Bureau of the Highway Patrol. As a result of that interview, a body recorder and bodywire were placed on Vortice for the purpose of recording conversations between Thomas and Vortice. Later that night, Vortice met with Thomas, who made incriminating statements regarding his activities in the alleged conspiracy. Leon Williams, an agent with the Mississippi Bureau of Narcotics, was inside Vortice's house, monitoring and recording the conversation. In essence, two tapes were made, one from the recorder on Vortice and one in the room in the house made by Leon Williams monitoring the conversation between Vortice and Thomas. Vortice committed suicide on September 28, 1995.

¶10. As a result of the investigation, a five count indictment was entered against Thomas on December 12, 1995. Count I indicted Thomas for willfully, unlawfully, and feloniously conspiring with Clark, Vortice, and Fontroy, under the color of his office as a law enforcement officer, to stop and detain a person with possession of a controlled substance, obtain possession of that controlled substance, and transfer said controlled substance. Counts II and V indicted Thomas with the transfer of a controlled substance -- marijuana of more than one kilogram. Counts III and IV indicted Thomas with armed robbery with respect to Newby and Dickerson (Cuz).

¶11. Trial was held in Cohoma County Circuit Court, beginning on February 19, 1996. The trial judge directed verdicts in Thomas' favor on Counts II and V, which charged that Thomas and others had transferred marijuana to Fontroy. The judge found that there was no proof that the purported drugs were in fact drugs, therefore, he found that the State had failed to prove its case as to these two counts. The jury found Thomas not guilty of armed robbery on Count III and did not reach a verdict on the Count IV armed robbery. However, the jury returned a guilty verdict for conspiracy under Count I of the indictment. Thomas was sentenced to five years in an institution under the supervision of the Mississippi Department of Corrections, with four years suspended.

¶12. From this conviction, Thomas now appeals.

## DISCUSSION OF THE LAW

### I. WHETHER THE COURT VIOLATED THOMAS' RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSE WHEN HE WAS FOUND GUILTY OF CONSPIRACY.

¶13. Thomas urges this Court to reverse and render his conviction for conspiracy, as this conviction violates his double jeopardy rights. He asserts that the charge of conspiring to distribute a controlled substance was subsumed by the charges of transfer, sale, or distribution of a controlled substance. Thomas argues that the State should not have been allowed to proceed with the conspiracy charge given the directed verdicts on what he calls the "substantive charges."

¶14. Double jeopardy embodies three separate constitutional protections. "`It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'"

*White v. State*, 702 So. 2d 107, 109 (Miss. 1997) (*quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted)).

¶15. This Court recently addressed the issue of double jeopardy in *Cook v. State*, 671 So.2d 1327 (Miss. 1996):

> The Double Jeopardy Clause of the Fifth Amendment reads as follows, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This proscription "has been applied to the states through the Due Process Clause of the Fourteenth Amendment." *McNeal v. Hollowell*, 481 F.2d 1145, 1149 (5th Cir.1973), cert. denied, 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1974) (citations omitted).

> Double jeopardy protection applies to successive prosecutions for the same criminal offense. *United States v. Dixon*, 509 U.S. 688, 694, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556 (1993). The Supreme Court has also held that:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies.... The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

> *Dixon*, 509 U.S. at 696, 113 S.Ct. at 2856 (citations omitted). In *Dixon*, the Court recognized that in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), it adopted an additional test that "a subsequent prosecution must satisfy a 'same-conduct' test to avoid the double jeopardy bar." *Id.* at 697, 113 S.Ct. at 2856. However, the Court concluded that "*Grady* must be overruled. . . . *Grady* lacks constitutional roots. The 'same conduct' rule it announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." *Dixon*, 509 U.S. at 704, 113 S.Ct. at 2860. Thus, as the Supreme Court has articulated, the rule is again the "*Blockburger*" or "same-elements" test.

*Id.* at 1331.

¶16. "'Conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully, the persons agreeing in order to form the conspiracy.' Miss. Code Ann. § 97-1-1 (1972). Conspiracy is a complete offense in itself, distinct from the commission of the crime contemplated by the conspiracy and does not become merged with that crime.... The offense is complete without showing an overt act in the furtherance of the conspiracy." *State v. Thomas,* 645 So. 2d 931, 933 (Miss. 1994)(*quoting Davis v. State,* 485 So.2d 1055, 1057-58(Miss. 1986)). As to the crime of transfer our statute states:

> (a) Except as authorized by this article, it is unlawful for any person to knowingly or intentionally:

> (1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute, or dispense, a controlled substance;...

Miss. Code Ann. § 41-29-139 (1993). Thomas' agreement with Clark, Vortice, and Fontroy to possess and transfer a controlled substance, a conspiracy, clearly embodies elements which are not contained in the transfer statute, and *vice versa*.

¶17. Since double jeopardy bars prosecuting a person for the same crime twice, and because conspiracy and transfer of a controlled substance have been shown to be separate crimes, *supra*, the necessary conclusion is that Thomas does not have a valid double jeopardy claim. In this case the crime of conspiracy was *complete* when Thomas agreed with Clark, Vortice, and Fontroy to unlawfully possess and transfer a controlled substance. This assignment of error is clearly without merit.

### II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ADMITTING INTO EVIDENCE THE "VORTICE TAPE" IN VIOLATION OF THOMAS' RIGHT TO CONFRONT THE WITNESSES AGAINST HIM.

¶18. Thomas contends that the trial court erroneously admitted the taped conversation between Vortice and Thomas made on September 27, 1995. He argues that the admission of said tape violated his constitutional right to confront the witnesses against him. Thomas argues that he suffered from his inability to cross-examine Vortice as to any promises made to him by the State's agents in order to induce him to have and tape the conversation with him. Thomas' contention is that the asserted confrontation clause violation is not cured by the limiting instruction which the judge gave which indicated the statements of Vortice on the tape were to provide context for his statements.

¶19. The State argues that Thomas objected at trial only on the ground that the State was offering a copy of the tape, not an original, and is now expanding his objection on appeal, citing *Fleming v. State*, 604 So. 2d 280, 292 (Miss. 1992), as authority. As such the objection was not before the trial court, thereby negating the trial court's opportunity to address the issue.

¶20. Thomas did indeed object to the introduction of the tape into evidence through Leon Williams' testimony on the ground that the tape was not the original. The State, however, is incorrect in its assertion that Thomas did not bring the confrontation clause issue up at trial, as he objected on that ground when the State initially sought to get the tape into evidence through Sammy Aldrige's testimony earlier in the trial. The judge halted Aldridge's testimony and asked the State to do further research before he would admit the tape into evidence. The tape was eventually admitted into evidence through the testimony of Leon Williams. As this issue was indeed before the court when the tape was initially sought to be entered into evidence, the State's argument becomes much less persuasive.

¶21. On the merits, however, Thomas' argument that the admission of the Vortice tape violated his right to confront the witnesses against him must fail. A criminal defendant is guaranteed the right to confront the witnesses against him. U.S. Const. amend. VI; Miss. Const. art. 3, § 26. *See Boykin v. Alabama*, 395 U.S. 238 (1969); *Pointer v. Texas*, 380 U.S. 400 (1965); *Ahmad v. State*, 603 So.2d 843, 847 (Miss.1992). Additionally, this Court reviews admission of evidence for an abuse of discretion. *Butler v. State*, 592 So. 2d 983, 986 (Miss. 1991); *Stromas v. State*, 618 So. 2d 116, 119 (Miss. 1993). "Unless the trial judge's discretion is so abused as to be prejudicial to the accused, this Court will not reverse his ruling." *Parker v. State*, 606 So. 2d 1132, 1136 (Miss. 1992); *Shearer v. State*, 423 So.2d 824, 826 (Miss.1982), citing *Page v. State*, 295 So.2d 279 (Miss.1974)). "The

discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence." ***Johnston v. State***, 567 So.2d 237, 238 (Miss. 1990). This issue is controlled by this Court's holding in ***Stromas***, a case which in which the facts are comparable to the facts of the case *sub judice*.

¶22. In ***Stromas***, an undercover agent along with an informant met Emmett Stromas, Sr., in front of Stromas' apartment in Hattiesburg for the purpose of buying cocaine. ***Stromas***, 618 So. 2d at 118. Stromas entered the undercover agent's car and the three of them drove to another Hattiesburg apartment complex where Stromas was to pick up the drugs. ***Id.*** During this ride, the three's conversation regarding the price and amount of cocaine to be purchased was recorded by a Unitel recording device worn by the undercover agent. ***Id.*** Once at the complex, the undercover agent gave Stromas $70.00. ***Id.*** Stromas then exited the car and returned seven or eight minutes later with some cocaine. ***Id.*** The three drove back to Stromas' apartment; their conversation was again recorded. ***Id.*** Stromas was indicted on the charge of sale of a controlled substance. ***Id.*** At trial, the State introduced the tape recording made by the undercover agent. ***Id.*** The undercover agent and other police officers testified as to the authenticity of the recording and the identification of the substance purchased as cocaine. ***Id.*** Importantly, the informant did not testify. ***Id.*** The State claimed that she had moved her residence and could not be located. ***Id.*** The jury found Stromas guilty on the charge of sale of a controlled substance. ***Id.*** Stromas contended that the State withheld the information of the informant's whereabouts, thus abridging his right to confront the witnesses against him. ***Id.*** at 121. This Court stated that

> Stromas does not allege any bad faith by the State, but simply argues that because the State could not locate [the informant], his defense was fatally impaired. The State provided evidence as to its good faith attempt to locate [the informant] and *the trial court did not abuse his discretion in finding that Stromas's right to confrontation had been satisfied.*

***Id.*** at 122 (emphasis added).

¶23. In the case *sub judice*, the tape was authenticated by Sammy Aldridge, the officer who interviewed Vortice, and Leon Williams who was present at the interview and was the person in Vortice's residence who listened to the conversation and recorded it. Both had the opportunity to hear Thomas and recognize his voice and both had listened to the tapes, in addition to Williams hearing and taping the conversation between Vortice and Thomas. Additionally, both testified as to the chain of custody of the tape. Vortice's unavailability is a given, as he had committed suicide; and, as such, there is no allegation that the State in any way acted in bad faith, as was the charge in ***Stromas***.

¶24. The judge gave a limiting, missing witness instruction which indicated that the statements of Vortice were for the sole purpose of providing context to Thomas' statements. As such, the tape is clearly admissible under our rules of evidence because the out of court statements of Vortice on the tape were admitted into evidence for a reason other than for the truth asserted in those statements. Miss. R. Evid. 801 (c).

¶25. Beyond that, the contested statement constitutes harmless error in the instant case because of the overwhelming evidence of guilt. This Court has held that:

> The basic test for harmless error in the federal constitutional realm goes back to ***Chapman v. California***, 386 U.S. 18... (1967). The Chapman test is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*quoted* in ***Yates v. Evatt***, 500 U.S. 391,392... (1991)). The ***Yates*** Court further clarified that the inquiry is not whether the jury considered the improper evidence or law at all, but rather, whether that error was "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." ***Yates***, 500 U.S. at 403....

*Wilcher v. State*, 635 So. 2d 789, 798 (Miss. 1993). In the instant case, the evidence of Thomas' guilt was indeed overwhelming, considering specifically the testimony of his co-conspirators, Clark and Fontroy, and the inculpating conversations between Thomas and his co-conspirators recorded on three tapes admitted into evidence. Thus, assuming arguendo that the admission of the Vortice tape into evidence was error, such was harmless.

¶26. On the authority of *Stromas* and our rules of evidence, this Court holds that the trial judge did not abuse his discretion in allowing the Vortice tape into evidence; and, if such was error, it was harmless. Thus, this assignment of error is without merit.

## CONCLUSION

¶27. Thomas was a police officer and by his actions abused the trust that was given him by his community and society. As such, a jury convicted him of the crime of conspiracy to possess and transfer a controlled substance. He now asks this Court to reverse his conviction because he believes that his constitutional rights under the double jeopardy clause and the confrontation clause have been violated. However, as discussed *supra*, these assignments of error are without merit. As such, the conviction of Walter Thomas for conspiracy to possess and transfer a controlled substance is affirmed.

¶28. **CONVICTION OF CONSPIRACY TO POSSESS AND TRANSFER A CONTROLLED SUBSTANCE AND SENTENCE OF FIVE YEARS, WITH FOUR YEARS SUSPENDED AFTER APPELLANT HAS SERVED ONE YEAR, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $4,000.00 AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**